FILED
COURT OF APPEALS
DIVISION II

2013 AUG 13 AM 10: 27

STATE OF WASHINGTON

BY_____
          DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42886-5-II |
| Respondent, | |
| v. | |
| JOHN MATTHEW LUNDY, | PUBLISHED OPINION |
| Appellant. | |

QUINN-BRINTNALL, J. — John Lundy appeals his judgment and sentence entered on remand, arguing that inadequate evidence supports the trial court's finding that he has the current or likely future ability to pay legal financial obligations and, under this court's decision in *State v. Bertrand*, 165 Wn. App. 393, 405, 267 P.3d 511 (2011), *review denied*, 175 Wn.2d 1014 (2012), remand is appropriate to strike the trial court's ability to pay finding. Because a trial court is prohibited from imposing legal financial obligations only when it appears from the record that there is no likelihood that the defendant's indigency will end, a situation markedly different from Lundy's, the record here supports the finding that Lundy has the present or likely future ability to pay discretionary legal financial obligations. In addition, a trial court need not analyze whether a defendant has the ability to pay mandatory legal obligations, *Bertrand* is clearly distinguishable, and nothing in the record suggests that the State has yet to enforce the

order establishing Lundy's mandatory and discretionary legal financial obligations (rendering any challenge to the order unripe). Accordingly, we affirm.

## FACTS

In 2010, a jury found Lundy guilty of possession of a stolen motor vehicle, two counts of unlawful issuance of bank checks or drafts, and two counts of bail jumping. RCW 9A.56.140(1), .060; RCW 9A.76.170(1). At sentencing, the trial court imposed an exceptional sentence of 70 months in light of Lundy's "long history of lawbreaking that simply goes beyond what is contemplated in a standard range calculation" and because Lundy's high offender score left some of the crimes for which he was convicted unpunished. Report of Proceedings (RP) (Feb. 4, 2010) at 21.

The trial court also imposed $2,697.82 in legal financial obligations. Neither party expressly discussed Lundy's future ability to pay legal financial obligations, but the record contains the following: (1) Lundy told the trial court that before succumbing to drug addiction, he had made over $100,000 annually; (2) he hoped to return to the community as a productive citizen after addiction treatment; and (3) he anticipated that his wife would be at the sentencing hearing to pay all of the fees.[1]

Lundy appealed his judgment and sentence and, in a part published opinion, we affirmed his convictions. *State v. Lundy*, 162 Wn. App. 865, 256 P.3d 466 (2011). But because the record was unclear as to whether the trial court relied on RCW 9.94A.535(2)(b) or (c) in imposing the

---

[1] The record reflects that Lundy's wife had been given incorrect information on when the sentencing hearing was to occur and, as a result, did not show up during sentencing to pay the fees.

No. 42886-5-II

exceptional sentence, we remanded to the trial court for reconsideration of the exceptional sentence.[2]

On remand for resentencing, both parties acknowledged that the trial court's previous exceptional sentence analysis related to RCW 9.94A.535(2)(c) and that any reference to RCW 9.94A.535(2)(b) in the judgment and sentence was a scrivener's error. The State asked the trial court to resentence Lundy to the same exceptional sentence as before but reduce the $1,000 jury assessment fee to $250; Lundy's counsel agreed with this recommendation. Accordingly, at resentencing, the trial court imposed a 70-month exceptional sentence but reduced the jury fee assessment by $750.

This left Lundy responsible for the following fees:

Victim Restitution: $554.52
Victim Assessment: $500.00
Court Costs: $793.30
Deoxyribonucleic acid (DNA) Fee: $100.00

Total: $1,947.82

Lundy timely appeals the imposition of these legal financial obligations.

DISCUSSION

LEGAL FINANCIAL OBLIGATIONS

Lundy argues that insufficient evidence supports the trial court's finding that he has the current or likely future ability to pay legal financial obligations and, under this court's decision

---

[2] RCW 9.94A.535(2)(b) allows for imposition of an exceptional sentence when "[t]he defendant's prior unscored misdemeanor or prior unscored foreign criminal history results in a presumptive sentence that is clearly too lenient." RCW 9.94A.535(2)(c) allows for an exceptional sentence when "[t]he defendant has committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished."

in *Bertrand*, remand is appropriate to strike the trial court's ability to pay finding.[3] We disagree because evidence in the record suggests that Lundy has or will have the future ability to pay $1,947.82 in legal financial obligations, including the $593.30 of these obligations involving discretionary court costs, *Bertrand* is distinguishable, and any challenge to the order establishing Lundy's mandatory and discretionary legal financial obligations is not yet ripe.

### A.    MANDATORY LEGAL FINANCIAL OBLIGATIONS

As a preliminary matter, we note that Lundy does not distinguish between mandatory and discretionary legal financial obligations. This is an important distinction because for *mandatory* legal financial obligations, the legislature has divested courts of the discretion to consider a defendant's ability to pay when imposing these obligations. For victim restitution, victim assessments, DNA fees, and criminal filing fees, the legislature has directed expressly that a defendant's ability to pay should not be taken into account. *See, e.g., State v. Kuster*, No. 30548-1-III, 2013 WL 3498241 (Wash. Ct. App., July 11, 2013). And our courts have held that these mandatory obligations are constitutional so long as "there are sufficient safeguards in the current

---

[3] Lundy also raises the issue of legal financial obligations under an ineffective assistance of counsel claim. The State, however, concedes that Lundy can raise this issue for the first time on appeal (without resort to an ineffective assistance claim) because the trial court "readdressed the legal financial obligations on remand and made a discretionary decision about them, and thus the matter can be reviewed by an appellate court even though it was not raised in the earlier appeal nor addressed by the appellate court at that time." Br. of Resp't at 1. *See State v. Barberio*, 121 Wn.2d 48, 50, 846 P.2d 519 (1993) ("'The trial court may exercise independent judgment as to decisions to which error was not assigned in the prior review, and these decisions are subject to later review by the appellate court.'") (quoting 2 L. ORLAND & K. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE, at 481 (4th ed. 1991)); RAP 2.5(c)(1). Accepting the State's concession, we do not separately address Lundy's claims concerning the legal financial obligations as an ineffective assistance claim.

No. 42886-5-II

sentencing scheme to prevent *imprisonment* of indigent defendants."[4] *State v. Curry*, 118 Wn.2d 911, 918, 829 P.2d 166 (1992) (emphasis added).

RCW 9.94A.753(4) and (5) dictate that "[r]estitution shall be ordered whenever the offender is convicted of an offense which results in . . . damage to or loss of property" and "[t]he court may not reduce the total amount of restitution ordered because the offender may lack the ability to pay the total amount." Thus, the $554.52 in restitution Lundy owed is mandatory. Additionally, a $500 victim assessment is required by RCW 7.68.035(1)(a), a $100 DNA collection fee is required by RCW 43.43.7541, and a $200 criminal filing fee is required by RCW 36.18.020(2)(h), irrespective of the defendant's ability to pay. *See State v. Curry*, 62 Wn. App. 676, 680-81, 814 P.2d 1252 (1991), *aff'd*, 118 Wn.2d 911; *State v. Thompson*, 153 Wn. App. 325, 336, 223 P.3d 1165 (2009). Because the legislature has mandated imposition of these legal financial obligations, the trial court's "finding" of a defendant's current or likely future ability to pay them is surplusage.

B.     DISCRETIONARY COURT COSTS AND FEES

Unlike mandatory obligations, if a court intends on imposing *discretionary* legal financial obligations as a sentencing condition, such as court costs and fees, it must consider the defendant's present or likely future ability to pay. As the Washington Supreme Court explained

---

[4] Washington, like many other jurisdictions, has adopted the Second Circuit Court of Appeals reasoning in *United States v. Pagan*, 785 F.3d 378, 381-82 (2d Cir.), *cert. denied*, 479 U.S. 1017 (1986) (internal quotation marks omitted) (quoting *U.S. v. Hutchings*, 757 F.2d 11, 14-15 (2d Cir.), *cert. denied*, 472 U.S. 1031 (1985)), concerning whether imposing mandatory fees implicates a defendant's constitutional rights:
> Constitutional principles will be implicated . . . only if the government seeks to enforce collection of the assessments "at a time when [the defendant is] unable, through no fault of his own, to comply."

We note, as well, that the Washington Constitution forbids "imprisonment for debt, except in cases of absconding debtors." Art. I, § 17.

No. 42886-5-II

in *Curry*, the "salient features of a constitutionally permissible costs and fees structure" must

meet the following requirements:

> 1. Repayment must not be mandatory;
> 2. Repayment may be imposed only on convicted defendants;
> 3. Repayment may only be ordered if the defendant is or will be able to pay;
> 4. The financial resources of the defendant must be taken into account;
> 5. A repayment obligation may not be imposed if it appears there is no likelihood the defendant's indigency will end;
> 6. The convicted person must be permitted to petition the court for remission of the payment of costs or any unpaid portion;
> 7. The convicted person cannot be held in contempt for failure to repay if the default was not attributable to an intentional refusal to obey the court order or a failure to make a good faith effort to make repayment.

118 Wn.2d at 915-16.

RCW 10.01.160, the statute codifying Washington's court costs and fee structure, meets

the *Curry* requirements. RCW 10.01.160(3) provides that

> [t]he court shall not order a defendant to pay costs unless the defendant is or will be able to pay them. In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose.

And RCW 10.01.160(4) allows the trial court to modify the monetary portion of a sentence and

reduce the costs imposed when payment will impose a manifest hardship on the defendant or his

family.[5] Thus, unlike other portions of the judgment and sentence, these discretionary legal

financial obligations are subject to revision and are not final.

Neither RCW 10.01.160 "nor the constitution requires a trial court to enter formal,

specific findings regarding a defendant's ability to pay [discretionary] court costs." *Curry*, 118

_____

[5] We note that, as with seeking appointment of counsel at public expense or review by an appellate court at the public's expense, it is the defendant's burden to prove manifest hardship and/or indigency. *See* RCW 10.101.020; CrR 3.1(d); RAP 15.2.

6

No. 42886-5-II

Wn.2d at 916. But if an unnecessary finding is made,[6] perhaps through inclusion of boilerplate language in the judgment and sentence, we review it under the clearly erroneous standard.[7] *Bertrand*, 165 Wn. App. at 404 n.13 (quoting *State v. Baldwin*, 63 Wn. App. 303, 312, 818 P.2d 1116, 837 P.2d 646 (1991)).[8] "A finding of fact is clearly erroneous when, although there is some evidence to support it, review of all of the evidence leads to a 'definite and firm conviction that a mistake has been committed.'" *Schryvers v. Coulee Cmty. Hosp.*, 138 Wn. App. 648, 654, 158 P.3d 113 (2007) (quoting *Wenatchee Sportsmen Ass'n v. Chelan County*, 141 Wn.2d 169, 176, 4 P.3d 123 (2000)).

---

[6] It is worth distinguishing between the trial court's *order* imposing legal financial obligations and a *finding of fact* in a judgment and sentence related to ability to pay. A court's order imposing legal financial obligations, as we discuss more fully below, is not ripe for review until the State seeks to enforce payment, RAP 3.1, whereas a factual finding is ripe for review upon entry. *Bertrand*, 165 Wn. App. at 403-05.

[7] In this case, the judgment and sentence included boilerplate language in its factual findings, stating,

> The court has considered the total amount owing, the defendant's past, present and future ability to pay legal financial obligations, including the defendant's financial resources and the likelihood that the defendant's status will change. The court finds that the defendant has the ability or likely future ability to pay the legal financial obligations imposed herein.

Clerk's Papers (CP) at 59. As explained in detail above, this boilerplate "finding" is unnecessary as to mandatory obligations and, as to discretionary obligations, creates undue confusion when placed in the judgment and sentence.

RCW 9.94A.760(1) allows that "[t]he court must on either the judgment and sentence *or on a subsequent order to pay*, designate the total amount of a legal financial obligation. . . . If the court fails to set the offender monthly payment amount, the department [of corrections] shall set the amount if the department has active supervision of the offender." (Emphasis added.) A finding of ability to pay more appropriately occurs when a subsequent order to pay is entered.

[8] We note that the *Bertrand* decision failed to distinguish between mandatory and discretionary costs. But in *Curry*, the Washington Supreme Court clearly differentiated between these types of legal financial obligations. *See also Baldwin*, 63 Wn. App. at 309 ("As noted in *Curry*, different components of the financial obligations imposed on a defendant, such as attorney fees, court costs, and victim penalty assessments, require separate analysis.").

7

The State's burden for establishing whether a defendant has the present or likely future ability to pay discretionary legal financial obligations is a low one. In *Baldwin*, for instance, this burden was met by a single sentence in a presentence report that the defendant did not object to:

> The presentence report contained the following statement, "Mr. Baldwin describes himself as employable, and should be held accountable for legal financial obligations normally associated with this offense." Baldwin made no objection to this assertion at the time of sentencing. . . . [I]nformation contained in the presentence report may be used by the court if the defendant does not object to that information. [*State v. Southerland*, 43 Wn. App. 246, 250, 716 P.2d 933 (1986).] Therefore, when the presentence report establishes a factual basis for the defendant's future ability to pay and the defendant does not object, the requirement of inquiry into the ability to pay is satisfied.

63 Wn. App. at 311.

The defendant in *Bertrand* presented this court with a markedly different situation. In *Bertrand*, the record did not just reveal that the trial court failed to consider whether the defendant could pay legal financial obligations but, to the contrary, showed that "in light of Bertrand's disability, her ability to pay [legal financial obligations] now or in the near future is arguably in question." 165 Wn. App. at 404 n.15. Essentially, the obligation in *Bertrand*—an obligation set to be imposed while the defendant was still incarcerated—potentially violated the fifth factor of the *Curry* test: "A repayment obligation may not be imposed if it appears there is *no* likelihood the defendant's indigency will end."[9] 118 Wn.2d at 915 (emphasis added).

_____

[9] Setting aside the logical impossibility of finding a future positive circumstance, we note that several recent cases mistakenly read the fifth *Curry* requirement—that a repayment obligation may not be imposed if it appears from the record there is no likelihood the defendant's indigency will end—as equivalent to the statement that "a repayment obligation may not be imposed unless it appears from the record that there is a likelihood that the defendant will have the future ability to pay legal financial obligations." But these statements set clearly different standards and are not equivalent. Moreover, where a defendant does not object at sentencing to the trial court's imposition of legal financial obligations on the grounds that there is no likelihood that his indigency—if present at the time of sentencing—will end, the trial court has no indication that imposition of legal financial obligations may violate *Curry*. In addition, because the defendant

8

No. 42886-5-II

The only *discretionary* legal financial obligations imposed in Lundy's case were $593.30 in court costs: the $343.30 in witness costs and the $250.00 jury demand fee. And contrary to Lundy's assertions, evidence in the record supports the trial court's finding that he has the future ability to pay these fees.[10]

During the original sentencing, Lundy told the trial court that before submitting to drug addiction, he made over $100,000 annually. He stressed that he hoped to return to the community as a productive citizen after addiction treatment and anticipated that his wife would be at the sentencing hearing to write a check to pay all of the fees. At resentencing, Lundy again stressed his desire to return to the community as a productive citizen after incarceration and treatment. In addition, the record reveals that Lundy will be approximately 40 years old when he leaves prison and, unlike the defendant in *Bertrand*, has no known disabilities that preclude the possibility of him working in the future. 165 Wn. App. at 404 n.15 ("[I]n light of Bertrand's disability, her ability to pay . . . is arguably in question.").

Although the trial court at sentencing did not specifically address Lundy's future ability to pay less than $2,000 in legal financial obligations, including less than $600 in discretionary court costs and fees, there is nothing in the record suggesting that Lundy's indigency (if present) would extend indefinitely. Because a showing of indigence is Lundy's burden, the record suggests that Lundy will have the ability to pay these fees in the future. This is decidedly

retains the ability to move the court for modification of the legal financial obligation on hardship grounds, RCW 10.01.160(4), the trial court does not violate *Curry* by imposing legal financial obligations at sentencing.

[10] Pursuant to RCW 9.94A.760(4), for offenses committed on or after July 1, 2000, "the court shall retain jurisdiction over the offender, for purposes of the offender's compliance with payment of the legal financial obligations, until the obligation is completely satisfied, regardless of the statutory maximum for the crime."

9

different than the situation in *Bertrand* where the evidence suggested that there was no likelihood that the disabled defendant could begin payment of legal financial obligations within 60 days of entry of the judgment and sentence while still incarcerated.[11] Instead, Lundy's situation more closely approximates that of the defendant in *Baldwin*. Accordingly, we affirm the trial court's imposition of the legal financial obligations imposed.

C. RIPENESS

As a final matter, we note that generally challenges to *orders* establishing legal financial sentencing conditions that do not limit a defendant's liberty are not ripe for review until the State attempts to curtail a defendant's liberty by enforcing them. *Compare State v. Ziegenfuss*, 118 Wn. App. 110, 112, 74 P.3d 1205 (2003) ("Because [the defendant] has not yet failed to pay her legal financial obligations . . . her argument is not yet ripe for review."), *review denied*, 151 Wn.2d 1016 (2004), *and Baldwin*, 63 Wn. App. at 310 ("[T]he meaningful time to examine the defendant's ability to pay is when the government seeks to collect the obligation."), *with Bertrand*, 165 Wn. App. at 404-05 (reviewing the merits of the trial court's sentencing conditions because a *disabled* defendant was *ordered to commence payment* of legal financial obligations within 60 days of entry of judgment and sentence while still incarcerated).

Here, nothing in the record reflects that the State has attempted to collect legal financial obligations from Lundy or even when Lundy is expected to begin repayment of these

---

[11] *See State v. Blazina*, ___ Wn. App. ___, 301 P.3d 492, 494 (2013) ("We noted that Bertrand had disabilities that might reduce her likely future ability to pay and that she was required to begin paying her financial obligations within 60 days of sentencing."). The *Blazina* court also held that because the defendant did not object to the trial court's finding of ability to pay, this court could refrain from allowing the defendant to raise that issue for the first time on appeal.

obligations. Accordingly, any challenge to the order requiring payment of legal financial obligations on hardship grounds is not yet ripe for review.

EXCEPTIONAL SENTENCE

In his statement of additional grounds (SAG),[12] Lundy also contends that on remand, the trial court violated the appearance of fairness doctrine when it resentenced him to the same exceptional sentence term that he received at his first sentencing hearing.[13] But Lundy fails to articulate *why* the trial court erred in sentencing him to the same exceptional sentence and has not directed our attention toward any evidence of the trial court's actual or potential bias.[14] Under the appearance of fairness doctrine, a judicial proceeding is valid only if a reasonable person, who knows and understands all the relevant facts, would conclude that the parties received a fair, impartial, and neutral hearing. *State v. Gamble*, 168 Wn.2d 161, 187, 225 P.3d 973 (2010); *Sherman v. State*, 128 Wn.2d 164, 205-06, 905 P.2d 355 (1995). A defendant claiming an appearance of fairness violation has the burden to provide evidence of a judge's actual or potential bias. *State v. Post*, 118 Wn.2d 596, 619, 826 P.2d 172, 837 P.2d 599 (1992).

---

[12] RAP 10.10.

[13] Lundy raises a number of issues in his SAG. Most of these issues involve Lundy's actual trial and were already addressed in our previous *Lundy* opinion. These issues are not timely. Moreover, the appellate record of the resentencing hearing (the only materials designated for our review) is insufficient to adequately address issues unrelated to sentencing. In addition, when a trial court has not, on remand, exercised its independent judgment and reviewed assignments of error not raised in an earlier appeal, a reviewing court will not address them for the first time on appeal following remand. *See Barberio*, 121 Wn.2d at 50-51.

[14] Lundy's SAG also asserts that the trial court abused its discretion in resentencing him to an exceptional sentence. But Lundy fails to adequately explain how reimposing the same sentence involved an abuse of discretion. Because we will not consider a SAG for review if it does not inform us of the nature and occurrence of alleged errors, we do not address this assertion. RAP 10.10(c).

Here, Lundy has failed to provide any evidence of judicial bias and the record belies the notion that the trial court acted with bias when it imposed a 70-month exceptional sentence on remand. At Lundy's first sentencing hearing, the State recommended the statutory maximum (120 months) for Lundy's possession of a stolen motor vehicle conviction in light of Lundy's offender score of 23.5 and his "horrendous felony history of 10 adult felony convictions and . . . three juvenile convictions." RP (Feb. 4, 2010) at 8. But the trial court, after discussing Lundy's history at some length, concluded that an exceptional sentence of 70 months was more appropriate. At Lundy's resentencing, the trial court again relied on its previous determination that RCW 9.94.A.535(2)(c) allowed for an exceptional sentence in Lundy's case because Lundy's high offender score meant that some of his current crimes would go unpunished.[15] Essentially, both parties agreed at resentencing that they were correcting a scrivener's error. Nothing in the record reflects that the trial court's decision to reimpose the 70-month sentence involved bias. We conclude that Lundy fails to demonstrate any violation of the appearance of fairness doctrine at his resentencing hearing.

Because the legislature has directed the trial court to impose victim restitution, victim assessment fees, DNA fees, and criminal filing fees as mandatory obligations, Lundy's arguments concerning those $1,354.52 in financial obligations are meritless. And because sufficient evidence supports the trial court's finding that Lundy has the present or future ability to pay $593.30 in discretionary court costs, *Bertrand* is distinguishable, and any challenge to the

---

[15] The judgment and sentence states that "[p]er RCW 9.94A.535(2)(c) the offender's range on Ct. I is clearly too lenient as a result of the defendant's (new) offender score of 26.5 points on Ct. I, including a subsequent 2010 conviction for a similar offense." CP at 59. As previously noted, RCW 9.94A.535(2)(c) allows for imposition of an exceptional sentence when "[t]he defendant has committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished."

No. 42886-5-II

order establishing Lundy's obligation to pay legal financial obligations is not yet ripe for review,

we affirm.

QUINN-BRINTNALL, J.

I concur:

HUNT, J.

13

JOHANSON, A.C.J. (concurring) — I concur with the majority opinion but write separately regarding Lundy's legal financial obligation (LFO) challenge because I would follow our analysis in *State v. Blazina*, ___ Wn. App. ___, 301 P.3d 492 (2013). I would decline to reach the merits of the LFO issue because Lundy did not object when the trial court found that Lundy had a present or future ability to pay LFOs and when the trial court imposed the LFOs. Accordingly, I would hold that Lundy did not properly preserve the issue for appellate review. RAP 2.5(a).

_____
Johanson, A.C.J.