IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Respondent, | ) | No. 33829-1-III |
| | ) | |
| v. | ) | |
| | ) | |
| DERRICK D. JONES, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Derrick D. Jones appeals his conviction for residential burglary. He contends (1) the trial court exceeded its statutory authority when it imposed discretionary legal financial obligations (LFOs) without making an individualized inquiry into his current and future ability to pay, and (2) his counsel was ineffective for failing to object to the imposition of discretionary LFOs. Mr. Jones also raises issues in a statement of additional grounds (SAG). We affirm.

## FACTS AND PROCEDURAL HISTORY

The State charged Mr. Jones with residential burglary stemming from a March 31, 2015 incident in the dwelling at 416 West Shoshone in Pasco—a vacant home that owner Nelson Gomez was in the process of remodeling. The case proceeded to a jury trial.[1]

The evidence showed Mr. Jones was homeless and staying nights at the Union Gospel Mission (UGM), while looking for work during the day. On nights when he had consumed alcohol, he was not allowed at UGM and would seek shelter elsewhere. This led to his removal from certain premises for trespassing in February and March 2015, including 416 West Shoshone on March 22. On that date, police arrested four individuals found in the basement, which had a separate entrance and could be accessed from a back door at the bottom of some stairs. The door was broken and individuals left personal belongings behind. Later that day, Nelson Gomez called police when he saw Mr. Jones enter his back yard and then the basement. Officers arrested Jones for trespass. On his way to jail, he expressed concern that his personal belongings were still inside the house.

By March 31, 2015, Mr. Jones had been released from jail. That evening, he returned to 416 West Shoshone in hopes of retrieving his belongings. A neighbor—Jose Rosales-Mosqueda—saw him enter the backyard, walk down the steps, and enter the house through the basement door. Mr. Rosales-Mosqueda telephoned Nelson Gomez,

---

[1] Although the trial facts bear little relevance to the LFO challenges raised by counsel, we set forth the facts in light of contentions Mr. Jones makes in his SAG.

2

who arrived within minutes. Gomez armed himself with a bat and confronted Jones, who was sitting at a table in the basement. He told Jones to stay where he was, but Jones stood up and came towards him with a large walking stick in hand. Gomez backed out of the doorway and started up the stairs as Jones aggressively jabbed the walking stick in his direction, although not making contact. As Gomez backed up the stairs, he noticed a knife among the tools he had left in the basement and grabbed it. Eventually, both men were up the stairs into the yard and Jones assumed a fighting posture. He asked Gomez if he was "ready," which Gomez interpreted as "ready to fight." Gomez testified he had not given Jones or anyone else permission to use the house.

Mr. Rosales-Mosqueda's stepson Jorge Sanchez-Torres testified similarly that he saw Mr. Jones with clenched fists and refusing Mr. Gomez's demands that he leave. Mr. Sanchez-Torres called 911. Police quickly arrived and arrested Jones. After receiving *Miranda*[2] warnings and waiving those rights, Jones told Officer Jeffrey Cobb that he knew he was not permitted to be at 416 West Shoshone but went back to retrieve his personal property left there on March 22. Officer Cobb said Jones claimed that a man named "Jose" gave him permission to enter the house, but the officer was unable to locate that individual.

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Mr. Jones testified to a different version of the events. He said that on March 31, an acquaintance, "Little Mario", confirmed his property was still at 416 West Shoshone and the two men walked there. Jones said only Mario went inside while he waited outside at the bottom of the steps. Mario emerged with the walking stick and Jones leaned it against a wall. Mario re-entered the basement to look for additional property. Nelson Gomez then arrived and was screaming at Jones in Spanish. Jones tried to explain over a language barrier that Mario was inside trying to retrieve his belongings. Gomez was armed with the bat and knife and knocked the walking stick to the ground as Jones reached for it. Jones walked up the stairs while Gomez backed up. He said Gomez poked him with the bat. Police arrived. Jones denied any assaultive behavior directed at Gomez. Jones said if he appeared ready to fight, it was out of necessity to defend himself.

Defense counsel conceded in closing argument that Mr. Jones committed trespass, but maintained he had no intent to commit a crime. He only wanted to retrieve his property and did not assault Mr. Gomez.

The jury found Mr. Jones guilty of residential burglary. The court imposed a high-end 84-month standard range sentence. The court also imposed LFOs totaling $1,391. Of that sum, $591 were discretionary costs including a $305 sheriff service fee, a $143 jury demand fee, and $143 for court appointed defense expert and other defense costs. The remaining $800 were mandatory costs including a $500 victim assessment, a $200

4

criminal filing fee, a $100 deoxyribonucleic (DNA) collection fee. The judgment and sentence contains the following boilerplate LFO language: "The court has considered the total amount owing, the defendant's present and future ability to pay legal financial obligations, including the likelihood that the defendant's status will change." Clerk's Papers at 52. The court also made the following boilerplate finding: "That the defendant is an adult and is not disabled and therefore has the ability or likely future ability to pay the legal financial obligations imposed herein. RCW 9.94A.753." *Id.* During the sentencing hearing, the court did not conduct an individualized inquiry into Mr. Jones's current or future ability to pay LFOs on the record, except to state: "I'm going to waive the [$500] fine and the [$600] attorney's fees. With that criminal history and your work history, you can't—I'm sure they are substantial. You have substantial legal financial obligations at this time." Report of Proceedings (Oct. 13, 2015) at 108. Defense counsel did not object to the LFOs imposed. During the sentencing hearing, the trial court also granted Jones's order of indigency for purposes of appeal. There was no discussion of his income, expenses, or assets. His certification states only that he was previously found indigent by order of the court on April 7, 2015, that there was no change in his financial status since that time, and he continued to lack sufficient funds to seek review in the case.

Mr. Jones timely appealed.

5

## ANALYSIS

### 1. *Unpreserved LFO Error*

For the first time on appeal, Mr. Jones contends the trial court exceeded its statutory authority by failing to consider his current or future ability to pay as required under RCW 10.01.160(3) before imposing the discretionary LFOs. He requests that we vacate the discretionary LFOs and remand for resentencing.

In *Blazina*, the Washington Supreme Court clarified that RCW 10.01.160(3) requires the trial court "do more than sign a judgment and sentence with boilerplate language stating that it engaged in the required inquiry." *State v. Blazina*, 182 Wn.2d 827, 838, 344 P.3d 680 (2015). Rather, the record must reflect that the trial court conducted an individualized inquiry into the defendant's current and future ability to pay. This inquiry includes evaluating a defendant's financial resources, incarceration, and other debts, including restitution. *Id.* Further, the court should consider whether a defendant qualifies as indigent under GR 34, which takes into account whether a person receives assistance from a needs-based program such as social security or food stamps, or whether their household income falls below federal poverty guidelines. *Id.* at 838-39 ("if someone does not meet the GR 34 standard for indigency, courts should seriously question that person's ability to pay LFOs").

In view of these principles, Mr. Jones emphasizes that he is indigent, homeless, and there is no indication he has any steady or significant income source. Yet, contrary to RCW 10.01.160(3) and the holding in *Blazina*, the trial court failed to make inquiry

6

into his ability to pay the discretionary LFOs imposed and instead relied on boilerplate language in the judgment indicating that any able-bodied adult has the current or future ability to pay LFOs.

The State concedes the trial court failed to make the required inquiry, but contends Mr. Jones is not entitled to a review of the LFO issue because he failed to object at sentencing, and in any event, the record establishes his physical ability to work and make payments in the future.

Subject to three exceptions that do not apply here, RAP 2.5(a) provides, in relevant part, that an appellate court "may refuse to review any claim of error which was not raised in the trial court." With respect to unpreserved challenges to LFOs, the court in *Blazina* clarified that "[a] defendant who makes no objection to the imposition of discretionary [LFOs] at sentencing is not automatically entitled to review." *Blazina*, 182 Wn.2d at 832. "Each appellate court must make its own decision to accept discretionary review." *Id.* at 835. Mr. Jones asks this court to exercise its discretion to review the LFO issue.

The trial court imposed both mandatory and discretionary LFOs. The mandatory LFOs included the $500 victim assessment, the $100 DNA collection fee, and the $200 criminal filing fee. *See* RCW 7.68.035(1)(a); RCW 43.43.7541; RCW 36.18.020(2)(h). These mandatory LFOs are required irrespective of Mr. Jones's ability to pay. *State v. Lundy*, 176 Wn. App. 96, 103, 308 P.3d 755 (2013). Thus, the discretionary costs that

7

required the trial court to inquire into his ability to pay were the $600 attorney fee, the $500 fine, the $305 sheriff service fee, the $143 jury demand fee, and $143 for court appointed defense expert and other defense costs. In alluding on the record to Mr. Jones's criminal history, work history and substantial LFOs, the court waived the attorney fee and fine before imposing the remaining $591 in discretionary costs. The members of the court are split as to the basis for declining to review Jones's *Blazina* claim. The small amount involved, the fact that sentencing occurred post-*Blazina*, and the fact that the trial court clearly recognized its discretion to waive discretionary LFOs are each circumstances that, individually or in combination, lead the court to the unanimous conclusion that Jones's *Blazina* claims should not be reviewed.

## 2. *Ineffective Assistance of Counsel*

Mr. Jones next contends his trial counsel gave him ineffective assistance by not challenging the imposition of discretionary LFOs at sentencing.

To establish ineffective assistance of counsel, he must show that his attorney's performance was deficient and that he was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). The first element of *Strickland* is met by showing that counsel's performance was not reasonably effective under prevailing professional norms. The second test is met by showing a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. *Id.* To prevail

8

on an ineffective assistance of counsel claim, a defendant must overcome a strong presumption that counsel's performance was reasonable. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). If the attorney's conduct "can be characterized as legitimate trial strategy or tactics," the conduct cannot be the basis of an ineffective assistance claim. *State v. McNeal*, 145 Wn.2d 352, 362, 37 P.3d 280 (2002). To meet the prejudice prong, a defendant must show, "based on the record developed in the trial court, that the result of the proceeding would have been different but for counsel's deficient representation." *McFarland*, 127 Wn.2d at 337.

Here, defense counsel did not object at the sentencing hearing when the trial court imposed the relatively small amount of discretionary LFOs without conducting an individualized inquiry into Mr. Jones's ability to pay. The court had just waived nearly two-thirds of the discretionary LFOs and counsel had focused the strategy at sentencing on putting Mr. Jones in a positive light while advocating, albeit unsuccessfully, for a low-end sentence. In any event, our record is insufficient to determine whether Mr. Jones— now age 35 and apparently able-bodied and physically capable of working—would be unable to repay the $591 in discretionary LFOs. Because Mr. Jones cannot show prejudice, we conclude he has not established his claim of ineffective assistance of counsel.

9

## 3. *SAG Issues*

In SAG 1, Mr. Jones contends his counsel was ineffective under the *Strickland* standards for deliberately leaving out evidence and investigative reports that would have helped prove he committed only a trespass and not residential burglary. In particular, he faults counsel for failing to (1) take proper photos of the complete area around the dwelling to show that witnesses, including Mr. Sanchez-Torres, could not have seen anything from angles and distances at night when the incident occurred, (2) locate and call defense witnesses such as Little Mario, and (3) present evidence that Officer Cobb failed to read him *Miranda* warnings before taking his alleged statement. Mr. Jones also extensively reargues his version of the trial evidence in an attempt to show the outcome would have differed but for counsel's alleged faulty performance.

The decision whether to investigate, call a particular witness, or present certain evidence is generally a matter of legitimate trial strategy or tactics that will not support an ineffective assistance claim. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 742, 101 P.3d 1 (2004). Again, we presume counsel's performance was reasonable. *State v. Grier*, 171 Wn.2d at 33. Mr. Jones does not overcome that presumption.

His complaints about absence of photographs or witnesses relate to matters outside the trial court record and cannot be reviewed. His appropriate course of action is to present evidence in support of his claims in a personal restraint petition, not an appeal. *State v. McFarland*, 127 Wn.2d at 335.

10

With regard to Mr. Jones's complaint about lack of *Miranda* warnings, the record shows the trial court held a CrR 3.5 hearing and entered written findings of fact and conclusions of law to the effect that Officer Cobb read him the *Miranda* warnings, which Mr. Jones indicated he understood before making a knowing and voluntary waiver of rights and giving statements to the officer that were ruled admissible in the State's case-in-chief. Mr. Jones makes no showing that his counsel performed deficiently with respect to the CrR 3.5 proceedings that resulted in proper admission of his *Mirandized* statements through Officer Cobb's trial testimony.

Finally, to the extent Mr. Jones is requesting this court to reweigh the trial evidence and credibility of witnesses in favor of convicting him only of trespass, it is not our role to do so. *See State v. Walton*, 64 Wn. App. 410, 415-16, 824 P.2d 533 (1992) (appellate court defers to the trier of fact on issues of conflicting testimony, witness credibility, and persuasiveness of the evidence).

In SAG 2, Mr. Jones contends the jury was inflamed and contaminated because juror no. 34, whom he identifies as an African American male working at Hanford Petroleum, expressed belief that anyone sitting in his (Jones's) chair and facing a trial was guilty and there was no reason for him to be there otherwise. We are unable to review this claim because our record contains no indication whether the juror made such statements or whether he was ultimately seated on the jury panel. Again, Mr. Jones's

11

remedy is to bring his claim in a personal restraint petition. *State v. McFarland*, 127 Wn.2d at 335.

### 4. *Appellate Costs*

Finally, Mr. Jones requests that we exercise our discretion and decline to award appellate costs to the State if he does not prevail on appeal. He reasons that the trial court found him indigent and entitled to appointed counsel on appeal, his prison term is seven years, and his prospects for paying appellate costs are dismal. The State has not responded to Mr. Jones's request.

RAP 14.2 states, "A commissioner or clerk of the appellate court will award costs to the party that substantially prevails on review, unless the appellate court directs otherwise in its decision terminating review." Under RCW 10.73.160(1), we have broad discretion to grant or deny appellate costs to the prevailing party. *See State v. Nolan*, 141 Wn.2d 620, 626, 8 P.3d 300 (2000); *State v. Sinclair*, 192 Wn. App. 380, 388, 367 P.3d 612 (2016). Although Mr. Jones has made his request in his opening brief as suggested by *Sinclair*, he has not submitted the proof of his continued indigency that this court requires under its June 10, 2016 general court order governing requests to deny an appellate cost award. Since our record lacks the necessary information to resolve Mr. Jones's request, we deny it without prejudice to the filing of a motion consistent with our general order.

Affirmed.

12

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Korsmo, J.

WE CONCUR:

Lawrence-Berrey, A.C.J.

Pennell, J.