IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49877-4-II |
| Respondent, | |
| v. | |
| MICHELE S. CALDWELL, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. – Michele S. Caldwell appeals her forgery conviction after a bench trial. Caldwell argues that the trial court erred by not entering adequate findings of fact and conclusions of law and by admitting the alleged forged check without authentication. Caldwell also argues that the sentencing court erred by imposing legal financial obligations (LFOs) because it incorrectly believed that those fees were mandatory.[1] We affirm.

FACTS

Caldwell lived with Lowell Gilbertson and his son, Bret Gilbertson. Lowell's[2] bank notified him of a suspicious check deposited at one of its branches. The check was made out to Bret and then endorsed to Caldwell. Lowell did not write the check.

---

[1] Caldwell also alleges in her assignment of error section of her brief that the State failed to prove that Caldwell committed forgery beyond a reasonable doubt. She, however, does not address this assignment of error in the analysis section of her brief. Accordingly, we deem this issue waived. *See* RAP 10.3(6) (appellant's brief should contain argument in support of issues presented in addition to citations to legal authority and to the relevant parts of the record).

[2] Because Lowell and Bret share the same last name, we use their first names for clarity. We intend no disrespect.

The State charged Caldwell with forgery and second degree identity theft. Caldwell waived her right to a jury trial and the matter proceeded to a bench trial.

During the bench trial, Lowell testified that he has a checking account at Key Bank and that the bank had contacted him about a "concerning transaction" involving his account. Verbatim Report of Proceedings (VRP) (Oct. 18, 2016) at 14. When shown a copy of the suspicious check, the State asked Lowell, "Does that appear to be a check from your checking account?" VRP (Oct. 18, 2016) at 15. Lowell responded that "it could be" a check from Key Bank, but Lowell suspected it was from an "organization[] wanting [him] to open a charge account." VRP (Oct. 18, 106) at 15.

Lowell testified he did not write the check and pointed out that it was made out to his son, but his son's name was misspelled and the signature was not Lowell's. Lowell also testified that his name was in the left corner of the check and it "appear[ed]" to be from his checking account, "but it's not the format of my check." VRP (Oct. 18, 2016) at 16.

The State then offered to admit the check as an exhibit. The trial court sustained the defense's lack of foundation objection because Lowell only testified that the check "appear[ed]" to be his. VRP (Oct. 18, 2016) at 17. Upon further questioning by the State, Lowell testified that the check was made out to "B-R-I-T" and that this spelling of his son's name was incorrect. VRP (Oct. 18, 2016) at 17.

The State then called Bret to testify. Bret testified that he was familiar with the check in question and that it was "a check written on my—a bank account of my father's." VRP (Oct. 18, 2016) at 21. Bret also testified that the back of the check was endorsed by "Brit Gilbertson" and

"signed over to Michele Caldwell." VRP (Oct. 18, 2016) at 22. Bret testified he did not sign the check. He also testified that he first saw the check when the investigating officer showed it to him.

The State moved again to admit the check. Caldwell again objected. The trial court overruled the objection and admitted the check.

Karen Kaino, a bank employee, testified that she was familiar with the check and that it was deposited into Caldwell's account through the Automated Teller Machine (ATM) at Kaino's branch. She testified that the check was suspicious and did not appear to be a regular check of Lowell's. Kaino also testified to the video surveillance showing Caldwell depositing the check at the bank's ATM.

The trial court found Caldwell guilty of forgery, but not guilty of second degree identity theft. The trial court entered findings of fact and conclusions of law. (CP 12-14) The findings state:

1. That on or about April 21, 2015, the defendant possessed, or uttered, or offered or disposed of, or put off as true a written instrument which had been falsely made, completed, or altered.

2. That the defendant knew that the instrument had been falsely made, completed, or altered.

3. That the defendant acted with intent to injure or defraud.

4. That the above acts occurred in the State of Washington.

Clerk's Papers (CP) at 13. The trial court also imposed mandatory LFOs totaling $600.

No. 49877-4-II

Caldwell appeals.

ANALYSIS

A. ADEQUACY OF FINDINGS OF FACT

Caldwell contends the trial court's findings of fact are inadequate and that this court should remand for entry of proper findings. We disagree.

"The criminal rules for superior court judges require that, following a bench trial, the judge enter findings of fact and conclusions of law." *State v. Banks*, 149 Wn.2d 38, 43, 65 P.3d 1198 (2003) (citing CrR 6.1(d)). "Adequate appellate review requires from the trial court findings of fact which show an understanding of the conflicting contentions and evidence, and a resolution of the material issues of fact that penetrates beneath the generality of ultimate conclusions, together with a knowledge of the standards applicable to the determination of those facts." *State v. Jones*, 34 Wn. App. 848, 851, 664 P.2d 12 (1983).

When drafting the findings of fact, "[e]ach element must be addressed separately, setting out the factual basis for each conclusion of law" and the findings must specifically state that each element has been met. *Banks*, 149 Wn.2d at 43. Where the trial court fails to meet these requirements, appellate review is subject to a harmless error analysis. *Id.*

The elements of forgery are set forth in RCW 9A.60.020. A person is guilty of forgery. "if, with intent to injure or defraud (a) . . . she falsely makes, completes, or alters a written instrument or; (b) . . . she possesses, utters, offers, disposes of, or puts off as true a written instrument which . . . she knows to be forged." RCW 9A.60.020(1)(a)-(b). The trial court's findings of fact state:

4

1.     That on or about April 21, 2015, the defendant possessed, or uttered, or offered or disposed of, or put off as true a written instrument which had been falsely made, completed, or altered.

2.     That the defendant knew that the instrument had been falsely made, completed, or altered.

3.     That the defendant acted with intent to injure or defraud.

4.     That the above acts occurred in the State of Washington.

CP at 13.

Here, the trial court separately addressed the elements of forgery and specifically stated that each element had been met in its findings of fact. While more details regarding the facts that support each element would be preferred, the findings still satisfy CrR 6.1(d) and *Banks*, 149 Wn.2d at 43. Moreover, Caldwell raises evidentiary and sentencing errors on appeal. These issues can both be reviewed without relying on the findings of fact entered. Accordingly, we hold the trial court's findings of fact are adequate and do not require remand.

B.     ADMITTANCE OF CHECK

Caldwell next argues the trial court erred by abusing its discretion in admitting the check in question. We disagree.

We review a trial court's decision to admit evidence for an abuse of discretion. *State v. Barry*, 184 Wn. App. 790, 801-02, 339 P.3d 200 (2014). A trial court abuses its discretion when its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons. *State v. Lord*, 161 Wn.2d 276, 283-84, 165 P.3d 1251 (2007). In other words, the court abuses its discretion if it relies on unsupported facts, takes a view that no reasonable person would take, applies the wrong legal standard, or bases its ruling on an erroneous view of the law. *Id.* at 284.

We will not reverse a trial court decision for an erroneous evidentiary ruling unless the error resulted in prejudice. *State v. Neal*, 144 Wn.2d 600, 611, 30 P.3d 1255 (2001). An error is prejudicial if there is a reasonable probability that the outcome would have been different had the error not occurred. *Id*. We presume that the trial court judge knows the rules of evidence and properly applies them. *In re Harbert*, 85 Wn.2d 719, 729, 538 P.2d 1212 (1975).

Under ER 901(a), "[t]he requirement of authentication . . . as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." A witness with personal knowledge of a piece of evidence may authenticate it by stating that the evidence is what it is claimed to be. ER 901(b)(1).

Here, Lowell testified that his bank contacted him about a suspicious check. Lowell also testified that the check offered at trial "could be" and "appear[ed] to be" from his checking account, but he suspected it was a check used to open a "charge" account. VRP (Oct. 18, 2016) at 15-16. Bret then testified that he was familiar with the check in question and that it was "a check written on my—a bank account of my father's." VRP (Oct. 18, 2016) at 21. Bret also testified that the back of the check was endorsed by "Brit Gilbertson" and "signed over to Michele Caldwell," but he did not sign the check. VRP (Oct. 18, 2016) at 22.

The combined testimonies of Lowell and Bret establish that they had personal knowledge of the account and check. This provided the necessary authentication for the check. Thus, tenable grounds exist for the trial court's decision to admit the check. The trial court did not abuse its discretion.

However, even if the trial court erred by admitting the check after Bret's testimony, the error would be harmless because it would have been admitted later after Kaino's testimony. Kaino, a bank employee, testified that she was familiar with the check and that it was deposited through the ATM at her branch. She testified that the check was suspicious and did not appear to be a regular check of Lowell's. Kaino also testified to the video surveillance showing Caldwell depositing the check at the bank's ATM.

We will not reverse an evidentiary ruling unless the error resulted in prejudice. *Neal*, 144 Wn.2d at 611. Since the check would have ultimately been admitted, any error in admitting it after Bret's testimony would be harmless and would not affect the trial's outcome. Therefore, we hold the trial court did not commit reversible error in admitting the check.

C.      LFOs

Caldwell next contends the sentencing court erred by incorrectly believing it lacked authority to waive all LFOs. We disagree.

Sentencing courts are required to impose mandatory LFOs. *State v. Lundy*, 176 Wn. App. 96, 102, 308 P.3d 755 (2013). Here, the trial court imposed a $500 crime victim assessment and a $100 deoxyribonucleic acid (DNA) collection fee. Each of these LFOs are required by statute and thus are mandatory. *Id.* Because the trial court imposed mandatory LFOs, Caldwell's claim fails.[3]

---

[3] In its response brief, the State argues that the sentencing court erred in only imposing a $500 crime victim assessment and a $100 DNA fee. Because the State did not file a cross appeal, this contention is not properly raised on appeal. RAP 10.3(a)(6). Accordingly, we do not address whether the sentencing court erred by not imposing additional LFOs.

No. 49877-4-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Worswick, P.J.

_____
Melnick, J.