**IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON**

STATE OF WASHINGTON,

               Respondent,

v.

JIMROY MANUEL BANNISTER,

               Appellant.

No. 78079-4-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: August 5, 2019

LEACH, J. — Jimroy Bannister appeals his conviction for possession of methamphetamine. After Bannister had a pretrial competency evaluation, the trial court found him competent. He claims the trial court should have inquired further into his competency after his counsel raised the issue a second time at the end of closing arguments. He also contends his counsel provided him ineffective assistance by misstating the law about the competency standard. And he challenges the trial court's imposition of the $100 DNA (deoxyribonucleic acid) fee.

First, chapter 10.77 RCW does not require that a court inquire into a defendant's competency unless it has doubts about his competency. Here, Bannister's trial counsel again raised the issue of competency after the trial court's initial competency ruling but stated that he believed Bannister was competent. Bannister provides no other evidence to show that the trial court had

reason to doubt his competency. Second, because Bannister does not prove his trial counsel's mistaken assertion that different competency standards exist for standing trial and pleading guilty contributed to his counsel's belief that he was competent, he does not show that his counsel performed deficiently. Last, even though Bannister has a documented history of mental health issues, the trial court did not consider his ability to pay the $100 DNA fee like RCW 9.94A.777 requires when a defendant suffers from a mental health condition. We affirm in part and remand to the trial court for it to consider whether Bannister has a mental health condition that would require it to determine whether he has the ability to pay the DNA fee.

## BACKGROUND

The State charged Bannister with possession of methamphetamine. In February 2017, at a pretrial hearing, his counsel asked the court for a competency evaluation of Bannister. The trial court ordered Bannister to complete an out-of-custody competency evaluation at Western State Hospital. Bannister did not attend the evaluation or his subsequent competency hearing. In November 2017, the court again ordered a competency evaluation.

Dr. Cynthia Mundt, a licensed psychologist with the Office of Forensic and Mental Health Services, evaluated Bannister. Her evaluation report noted that Bannister had been assessed for competency to stand trial twice before and both assessments stated that he presented symptoms of psychosis and concluded that he did not have the requisite capacity. After one assessment, he

participated in inpatient competency restoration that restored him to competency. The evaluator at that time noted that Bannister's symptoms of psychosis were potentially substance induced. Mundt documented that Bannister had been involuntarily detained for inpatient treatment at least once for substance-induced symptoms. She diagnosed Bannister with unspecified schizophrenia and other psychotic disorder and unknown substance use disorder. She stated that although Bannister "required a great deal of education about typical legal proceedings" and presented "with some mild evidence of cognitive disorganization," he demonstrated a "reasonable understanding of his charge and the legal proceedings he was facing" and "was able to recall detailed information during the evaluation." She concluded, "[D]espite [Bannister's] current symptoms of mental illness, [he] has the current capacity to understand the nature of the proceedings against him and the capacity to assist in his defense."

The trial court found Bannister competent to stand trial. Bannister's trial started in late January 2018. Right after closing arguments, Bannister's counsel stated that he wanted "to put something on the record before we recess." He then stated his concerns about Bannister's competency:

> It is—it is awkward for me to say, but I believe that—I have had concerns about Mr. Bannister's competency. I do not believe that he was—would be found incompetent to stand trial either by a private expert or by Western State. It is an issue. I believe that I even have trouble—as the court may know, the case law says that competency is different for giving up your right to trial versus going to trial. I just wanted to express that to the court. Even if we were

to come to an agreement at this point, I don't know if I would feel comfortable moving forward with a plea agreement with Mr. Bannister, that he would understand the rights he was giving up.

I only wanted to put that on the record because—it was becoming more and more clear throughout today some of the concerns that I have had in the past.

The trial court responded,

The defendant was found competent, right? We have now gone through trial. The jury has been sent out to deliberate, and now we are making this record.

. . . .

What I want to know from Mr. Repanich is what is the law then about raising competency when we have just sent the jury out to deliberate because he was found competent to stand trial? This was only just raised again just now after the jury was sent out to deliberate.

Are you suggesting that we need to take up competency again concerning your client's ability to stand trial?

Bannister's trial counsel clarified, "I believe that Mr. Bannister would be found competent to stand trial." He explained that he was raising the issue to "preserve [it] for the record" because "some of [Bannister's] behavior during trial—mostly when the jury wasn't in the room—seemed a little bit like he—bizarre. [There were] some comprehension issues." The trial court clarified that counsel was not "asking [the court] to do anything. [He was] simply making a record." Counsel responded, "Correct."

The jury found Bannister guilty as charged. The trial court imposed a sentence of credit for time served. Bannister appeals.

ANALYSIS

Competency

First, Bannister contends that the trial court erred when it did not (1) inquire further about his competency and (2) order a new competency evaluation after his trial counsel raised the issue after closing arguments. We disagree.

The due process clause of the Fourteenth Amendment to the United States Constitution guarantees a criminal defendant the right not to be tried while incompetent.[1] If a court has reason to doubt a defendant's competency, it violates due process when it fails to observe the procedures chapter 10.77 RCW provides to determine competency.[2] "'Incompetency' means a person lacks the capacity to understand the nature of the proceedings against him or her or to assist in his or her own defense as a result of mental disease or defect."[3]

If a trial court has reason to doubt the defendant's competency, the statute requires that the court order an expert to "evaluate and report upon the mental condition of the defendant."[4] The court must give "considerable weight" to defense counsel's opinion regarding his client's competency and ability to assist the defense.[5] Once the court makes a competency determination, it need not revisit competency unless new information shows a change in the defendant's

---

[1] State v. Heddrick, 166 Wn.2d 898, 903, 215 P.3d 201 (2009).
[2] Heddrick, 166 Wn.2d at 904.
[3] RCW 10.77.010(15).
[4] RCW 10.77.060(1)(a).
[5] State v. Lord, 117 Wn.2d 829, 901, 822 P.2d 177 (1991), overruled on other grounds by State v. Schierman, 192 Wn.2d 577, 438 P.3d 1063 (2018).

condition.[6] Reviewing courts defer to the trial court's judgment of a defendant's competency.[7] We will reverse a trial court's competency decision only upon finding an abuse of discretion.[8] A trial court abuses its discretion when no reasonable judge would have ruled the way that the trial judge did.[9]

Here, although after closing arguments Bannister's trial counsel stated that he "had concerns about Mr. Bannister's competency," he twice stated that he did not think Bannister was incompetent to stand trial. The sole reason that counsel provided for raising the issue was that Bannister's behavior seemed "bizarre" because Bannister was having comprehension issues. When the trial court expressly asked counsel whether he was asking it to do anything, counsel stated, "No"; he wanted only to preserve the issue on the record. Counsel provided no new information to suggest that Bannister's competency had changed since the court made its original competency determination.

Bannister contends the trial court erred when it failed to make "the threshold determination about whether a doubt exists sufficient to warrant an evaluation" because it (1) relied on its previous finding that he was competent, (2) placed "undue import" on the fact that the jury was already deliberating when his counsel raised the issue of competency, and (3) relied on a misstatement of law by accepting his counsel's assertion that different competency standards

---

[6] State v. Ortiz, 119 Wn.2d 294, 301, 831 P.2d 1060 (1992), disapproved of on other grounds by State v. Condon, 182 Wn.2d 307, 343 P.3d 357 (2015).
[7] State v. Coley, 180 Wn.2d 543, 551, 326 P.3d 702 (2014).
[8] Coley, 180 Wn.2d at 551.
[9] State v. Arredondo, 188 Wn.2d 244, 256, 394 P.3d 348 (2017).

inform a defendant's ability to stand trial or to plead guilty. But Bannister cites no authority requiring the trial court to make a "threshold determination" about a defendant's competency without first having doubts about his competency. Bannister cites only City of Seattle v. Gordon,[10] in which this court differentiated between a determination of a reason to doubt competency and a determination of competency; we stated that a factual basis must support a motion to determine competency. For the reasons discussed below, Bannister's trial counsel did not provide a factual basis that would have supported that Bannister was incompetent.

Bannister asserts that the trial court had reason to doubt his competency because of the information documented in his evaluation report, including his history of being found incompetent, his diagnoses, and Mundt's notes about his disorganized thought processes and inconsistent understanding of the law. But Bannister does not challenge the trial court's initial finding of competency, and he does not explain why the same information the trial court considered before finding that he was competent should later cause the court to doubt his competency. Based on Bannister's trial counsel's representations, a reasonable trial judge could have had no doubts about his competency or not believed that it had a factual basis to inquire about it. So chapter 10.77 RCW did not require the trial court to make any further inquiry. The court did not abuse its discretion by

_____

[10] 39 Wn. App. 437, 441-42, 693 P.2d 741 (1985).

not inquiring further into Bannister's competency or ordering a new competency evaluation.

Ineffective Assistance of Counsel

Next, Bannister contends that his trial counsel provided ineffective assistance because he did not ask the court to order a competency evaluation based on a misunderstanding of law. We disagree.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee the right to effective assistance of counsel to help ensure a fair trial.[11] Claims of ineffective assistance present mixed questions of law and fact, which this court reviews de novo.[12]

We examine an ineffective assistance claim with a strong presumption that counsel's representation was effective.[13] To succeed on an ineffective assistance claim, the defendant must show that (1) his counsel's performance fell below an objective standard of reasonableness and (2) prejudiced him.[14] Counsel's performance is deficient if it was unreasonable under prevailing professional norms and was not sound trial strategy.[15] We evaluate the

---

[11] See State v. Grier, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011); see also State v. Coristine, 177 Wn.2d 370, 375, 300 P.3d 400 (2013).
[12] In re Pers. Restraint of Fleming, 142 Wn.2d 853, 865, 16 P.3d 610 (2001).
[13] In re Pers. Restraint of Davis, 152 Wn.2d 647, 673, 101 P.3d 1 (2004).
[14] Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).
[15] Davis, 152 Wn.2d at 673.

reasonableness of counsel's performance from "'counsel's perspective at the time of the alleged error and in light of all the circumstances.'"[16]  A showing of prejudice requires that the defendant show a reasonable probability that the result of the trial would have been different without his counsel's deficient performance.[17]  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[18]

Bannister claims that his trial counsel provided deficient performance because he stated that different competency standards applied to a defendant's ability to stand trial and his ability to plead guilty and did not raise competency when he had reason to know that Bannister was incompetent.  The State does not dispute that the same standard of competency applies whether a defendant decides to go to trial or plead guilty.  But Bannister does not show that his counsel applied the incorrect competency standard in his assessment that Bannister was competent after closing arguments.  Although Bannister's counsel misstated that different competency standards exist, counsel neither misstated the standard nor discussed the law related to competency.  Bannister does not show deficient performance.

Even if his counsel's performance was deficient, Bannister does not show prejudice.  As discussed above, Bannister presented no evidence that his

---

[16] Davis, 152 Wn.2d at 673 (quoting Kimmelman v. Morrison, 477 U.S. 365, 384, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986)).
[17] Strickland, 466 U.S. at 694.
[18] Strickland, 466 U.S. at 694.

circumstances had changed or gave the trial court reason to doubt his competency. So he does not show a reasonable probability that the trial court would have found him incompetent. He does not overcome the strong presumption that his counsel's performance was effective.

Legal Financial Obligations

Last, Bannister asserts that because he suffers from a mental health condition, the trial court exceeded its authority by imposing the DNA fee without first determining whether he had the ability to pay as RCW 9.94A.777(1) requires. The State concedes that this issue requires remand. We agree.

We review the adequacy of the trial court's individualized inquiry into a defendant's ability to pay legal financial obligations (LFOs) de novo.[19]

In general, a court must impose mandatory LFOs regardless of the defendant's ability to pay.[20] However, RCW 9.94A.777 requires that if a defendant is unable to participate in gainful employment because of a mental disorder, the sentencing judge must determine if he has the ability to pay before imposing LFOs other than restitution or the victim penalty assessment (VPA):[21]

> (1) Before imposing any legal financial obligations upon a defendant who suffers from a mental health condition, other than restitution or the victim penalty assessment under RCW 7.68.035, a judge must first determine that the defendant, under the terms of this section, has the means to pay such additional sums.

---

[19] State v. Ramirez, 191 Wn.2d 732, 740, 426 P.3d 714 (2018).
[20] State v. Lundy, 176 Wn. App. 96, 102-03, 308 P.3d 755 (2013).
[21] Bannister also asserts that the trial court should reevaluate the VPA on remand. But RCW 9.94A.777(1) exempts the VPA from its requirements.

(2) For the purposes of this section, a defendant suffers from a mental health condition when the defendant has been diagnosed with a mental disorder that prevents the defendant from participating in gainful employment, as evidenced by a determination of mental disability as the basis for the defendant's enrollment in a public assistance program, a record of involuntary hospitalization, or by competent expert evaluation.

Here, the trial court imposed only mandatory LFOs, which were the $500 VPA and the $100 DNA fee.[22] Bannister's competency evaluation report documented that he has a history of mental health issues, and Mundt diagnosed him with schizophrenia and other psychotic disorder and unknown substance use disorder. During the sentencing hearing, his trial counsel stated that he had been self-studying to become an auto mechanic and had "been supporting himself" while being homeless for a number of years. And the evaluation report states that while Bannister was in jail for the charge at issue here, he worked in the jail's kitchen performing janitorial services. The trial court did not inquire about whether any mental health condition prevents Bannister from participating in gainful employment. We remand for the trial court to do so as RCW 9.94A.777 requires. And if the court answers in the affirmative, it must also decide whether Bannister has the ability to pay the DNA fee.

---

[22] RCW 7.68.035(1)(a) (VPA); RCW 43.43.7541 (DNA fee); Lundy, 176 Wn. App. at 102 (defining the VPA and the DNA fee as mandatory).

## CONCLUSION

We affirm in part and remand to the trial court for it to consider whether Bannister has a mental health condition that would require it to determine whether he has the ability to pay the DNA fee.

Leach, J.

WE CONCUR:

Chun, J.

Appelwick, CJ