IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 31648-3-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| CHARLOTTE DELENE BERGEN, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Charlotte Delene Bergen pleaded guilty to possession of controlled substance, methamphetamine, in exchange for receiving a reduced sentence under DOSA, the drug offender sentencing alternative, RCW 9.94A.660. She appeals her sentence, and contends that the sentencing court exceeded its authority when it ordered her to remain incarcerated until a space opened in a residential treatment facility. Ms. Bergen also appeals the sentencing court's imposition of legal financial obligations (LFOs), contending it failed to first find she had the present or future ability to pay. We conclude the trial court erred by incarcerating Ms. Bergen pending placement in a treatment facility. We affirm the imposition of LFOs.

FACTS

On December 3, 2012, the State charged Ms. Bergen with possession of a controlled substance, methamphetamine. The next month, the court issued a bench warrant when Ms. Bergen failed to maintain contact with her attorney. In March 2013, Ms. Bergen pleaded guilty to the charge. Her criminal history included seven prior drug convictions. The State agreed to recommend a residential DOSA sentence if Ms. Bergen qualified. The Department of Corrections (DOC) conducted a chemical dependency evaluation, which indicated that Ms. Bergen was drug dependent and predicted that she would "continue to engage in criminal behaviors to support addiction." Clerk's Papers (CP) at 21. The evaluation also noted that Ms. Bergen had been diagnosed with post-traumatic stress disorder and multiple personality disorder.

At sentencing, Ms. Bergen had been in jail 59 days. She requested a residential DOSA, acknowledging daily use of heroin and methamphetamine. She also acknowledged that her drug abuse caused social, emotional, and physical problems, and negatively affected work, school, and social activities. Based on Ms. Bergen's need for treatment, the trial court judge waived the standard range sentence of 12+ to 24 months of confinement and imposed 24 months of community custody on the condition that Ms. Bergen enter and remain in residential treatment for six months.

The court also imposed LFOs in the amount of $3,362.30 to be paid at $100 per month following treatment. However, it reduced the payment to $50 per month at Ms. Bergen's request when she said she was on a limited Social Security income.

Defense counsel then mentioned that there was no available space at the inpatient drug treatment facility and asked that Ms. Bergen be released pending a bed date. Defense counsel stated, "If we let [Ms. Bergen] go free she could go back to the drugs. On the other hand, the liberty interest is you just can't say well, if I was to let you free you would use drugs so you need to be incarcerated." Report of Proceedings (RP) (Apr. 18, 2013) at 116. The court asked the parties to check with DOC on the availability of a bed date. In the meantime, the court ordered Ms. Bergen to remain in jail.

Four days later, defense counsel moved for Ms. Bergen's immediate release, arguing there was no authority for holding her in jail pending admission into a treatment program. Defense counsel asserted that under DOSA, the sentence must be two years of community custody conditioned upon entering and remaining in treatment and that, by definition, community custody does not include incarceration. The prosecutor disagreed, contending the DOSA statute gives courts significant discretionary authority in fashioning a sentence. The prosecutor explained that the treatment facility would require a patient to be "clean" before entering treatment and that releasing Ms. Bergen untreated could

3

undermine the DOSA if she began using illegal substances while released. RP (Apr. 22, 2013) at 3. A DOC representative advised the court that there was a possible bed date of June 13, (just under two months), but added, "I'm very confident we'll be able to get her in sooner than that." RP (Apr. 22, 2013) at 4.

The court determined it had the discretion to detain Ms. Bergen pending entry into a treatment facility. In its oral ruling, it stated, "I think because [the DOSA statute] is really silent, the Court has discretion." RP (Apr. 22, 2013) at 5. In its written findings, the court emphasized: (1) Ms. Bergen had been incarcerated for almost two months pending sentencing for failure to maintain contact with her attorney; (2) Ms. Bergen's 15-year history of illegal substance abuse, which included seven prior felony convictions for drug-related crimes; and (3) the strong likelihood that a bed would be available in two months or sooner. The court then concluded it had "inherent authority to detain the Defendant from April 18, 2013, until such time as she enters a residential treatment facility." CP at 57.

Ms. Bergen appeals the detention order and the imposition of LFOs. Prior to this decision, counsel advised us that Ms. Bergen no longer was in custody, and she had completed her program.

No. 31648-3-III
*State v. Bergen*

## ANALYSIS

A.      *Whether this court should resolve the moot issue presented*

Ms. Bergen asserts the sentencing court exceeded its statutory authority under the DOSA statute when it ordered her to remain in jail pending a bed date in a treatment facility. The State contends the issue is moot because Ms. Bergen was released and has completed treatment.

A case is moot "when it involves only abstract propositions or questions, the substantial questions in the trial court no longer exist, or a court can no longer provide effective relief." *Spokane Research & Def. Fund v. City of Spokane*, 155 Wn.2d 89, 99, 117 P.3d 1117 (2005). However, "[a court] may decide a moot issue if it involves matters of continuing and substantial public interest. To determine whether a case involves the requisite public interest, we consider (1) the public or private nature of the question presented, (2) the desirability of an authoritative determination to provide future guidance to public officers, and (3) the likelihood that the question will recur." *Thomas v. Lehman*, 138 Wn. App. 618, 622, 158 P.3d 86 (2007) (citation omitted).

Because Ms. Bergen has been released from jail and completed treatment, this court cannot provide effective relief. Thus, the case is moot. However, at the release hearing, defense counsel noted "[t]his [issue] has come up before," and the trial court

5

indicated it needed guidance, given the DOSA statute's silence on the issue. RP (Apr. 22, 2013) at 2. In view of the need for an authoritative determination to provide future guidance and the certitude that this question will recur, we choose to answer the issue presented.

B.  *Whether, after imposition of a residential DOSA sentence, a trial court has authority to incarcerate an offender pending admission to a treatment facility*

Ms. Bergen argues that the fixing of punishments for a criminal offense is a legislative function and that a court's role is limited to imposing the sentence provided by law for that offense. Because the DOSA statute does not contain a provision for indeterminate incarceration pending a bed date, Ms. Bergen maintains that the trial court exceeded its authority in detaining her until space became available in a treatment facility.

The State disagrees. It argues that the statute gives the sentencing judge broad discretion to fashion the details of a DOSA to best effectuate legislative intent. Noting that the purpose of a DOSA is to treat offenders who abuse substances so as to reduce recidivism, the State contends that "the court's action did not usurp the legislative power, but effectuated the legislative intent through proper exercise of the court's power and discretion." Resp't's Br. at 11.

A sentencing court's authority under the Sentencing Reform Act of 1981, chapter 9.94A RCW, is a question of law, reviewed de novo. *State v. Parmelee*, 172 Wn. App.

6

899, 909, 292 P.3d 799, *review denied*, 177 Wn.2d 1027 (2013). Statutory interpretation is also a legal issue we examine de novo. *Multicare Med. Ctr. v. Dep't of Soc. & Health Servs.*, 114 Wn.2d 572, 582 n.15, 790 P.2d 124 (1990). When interpreting a statute, we must discern and implement our legislature's intent. *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003). If the statute's meaning is plain, we must effectuate it as an expression of our legislature's intent. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002).

Before we turn to the DOSA statute, we note that detention is a judicial power. CrR 3.2. Before a finding of guilt, a court may impose conditions of release upon an accused if the court finds that the accused is not likely to appear if released on personal recognizance. CrR 3.2(b). Traditionally, a bail bond in an appropriate amount will be set by a court. *See* CrR 3.2(b)(5).

Sentencing, however, is a legislative power. *State v. Bryan*, 93 Wn.2d 177, 181, 606 P.2d 1228 (1980). The legislature has the power to fix punishment for crimes subject only to the constitutional limitations against excessive fines and cruel punishment. *State v. Mulcare*, 189 Wash. 625, 628, 66 P.2d 360 (1937). It is the function of the legislature, not the judiciary, to alter the sentencing process. *State v. Monday*, 85 Wn.2d 906, 909-10, 540 P.2d 416 (1975). A trial court's discretion to impose a sentence is limited to what is

granted by the legislature, and the court has no inherent power to develop a procedure for imposing a sentence unauthorized by the legislature. *State v. Ammons*, 105 Wn.2d 175, 180, 713 P.2d 719, 718 P.2d 796 (1986).

The general statute that authorizes the imposition of a DOSA sentence is RCW 9.94A.660. RCW 9.94A.660(3) provides in relevant part:

> If the sentencing court determines that the offender is eligible for an alternative sentence under this section and that the alternative sentence is appropriate, the court shall waive imposition of a sentence within the standard sentence range and impose a sentence consisting of either a prison-based alternative . . . or a residential chemical dependency treatment-based alternative.

RCW 9.94A.664 governs a residential DOSA sentence. RCW 9.94A.664(1) provides in relevant part:

> A sentence for a residential chemical dependency treatment-based alternative shall include a term of community custody equal to one-half the midpoint of the standard sentence range or two years, whichever is greater, conditioned on the offender entering and remaining in residential chemical dependency treatment certified under chapter 70.96A RCW for a period set by the court between three and six months.

The remainder of RCW 9.94A.664 directs the court to impose those community custody conditions as directed by the DOC's examination report, directs the department to make chemical dependency assessment and treatment services available to the offender, requires the treatment provider to send the treatment plan to the court, requires the court

8

to schedule a progress hearing during the period of treatment and a termination hearing three months after treatment, requires the treatment provider and the department to submit timely reports to the court and parties, and grants the court authority to enter certain orders during the review or termination hearings. As observed by the trial court here, nothing in the residential DOSA statute authorizes a court to incarcerate an offender pending a bed date.

"After final judgment and sentencing, the court loses jurisdiction to the DOC." *State v. Harkness*, 145 Wn. App. 678, 685, 186 P.3d 1182 (2008). This leaves no room for inherent authority to be exercised by the sentencing court. *State v. Murray*, 118 Wn. App. 518, 524, 77 P.3d 1188 (2003). We hold that the trial court lacked authority to incarcerate Ms. Bergen as a condition of her residential DOSA sentence or under its inherent authority.

Nevertheless, there is a practical solution to this problem. The trial court may take a plea and delay sentencing until a bed date is available. As noted above, prior to sentencing, courts have authority to impose conditions of release and in the situation where an offender already has pleaded guilty and has admitted to being chemically dependent, the trial court is well within its authority to set or increase the bond amount to assure that the offender will appear at sentencing.

9

C.      *Whether the trial court erred in imposing LFOs*

Ms. Bergen assigns error to the imposition of LFOs without the trial court considering her present or future ability to pay. The State contends she did not preserve the issue because she did not object at the sentencing hearing. The State is correct.

Until our Supreme Court decides otherwise, the rule established by each division of this court is that a defendant may not challenge a determination regarding his or her ability to pay LFOs for the first time on appeal. *State v. Duncan*, 180 Wn. App. 245, 252-53, 327 P.3d 699 (2014); *State v. Calvin*, ___ Wn. App. ___, 316 P.3d 496, 507-08, *petition for review filed*, No. 89518-0 (Wash. Nov. 12, 2013); *State v. Blazina*, 174 Wn. App. 906, 911, 301 P.3d 492, *review granted*, 178 Wn.2d 1010 (2013). Thus, we decline to address this assignment of error.

Even if we were to reach this assignment of error, there is no error. The $500 victim assessment, $100 DNA (deoxyribonucleic acid) collection fee, and $200 criminal filing fee are each required irrespective of the defendant's ability to pay. *State v. Lundy*, 176 Wn. App. 96, 102, 308 P.3d 755 (2013).

As to the discretionary LFOs, RCW 10.01.160(3) requires that the court "take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose." In *State v. Baldwin*, this court affirmed a trial court's

finding that an offender had the present or likely future ability to pay LFOs where the only evidence to support it was a statement in the presentence report that the offender described himself as employable. *State v. Baldwin*, 63 Wn. App. 303, 311, 818 P.2d 1116, 837 P.2d 646 (1991). Here, the sentencing court granted Ms. Bergen's request to reduce her monthly payment from $100 per month to $50 per month based on her limited Social Security income. Ms. Bergen's indication that she could pay $50 per month satisfied the State's burden. "The State's burden for establishing whether a defendant has the present or likely future ability to pay . . . is a low one." *Lundy*, 176 Wn. App. at 106.

In conclusion, we hold that the trial court erred when it incarcerated Ms. Bergen following imposition of her residential DOSA sentence. We affirm the imposition of LFOs.

Lawrence-Berrey, J.

WE CONCUR:

Brown, A.C.J.

Korsmo, J.

11