FILED
COURT OF APPEALS
DIVISION II

2015 JUL -7 AM 8: 43

STATE OF WASHINGTON

BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45568-4-II |
| Respondent, | |
| v. | |
| OSCAR RAUL MORENO VARGAS. | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Oscar Moreno Vargas appeals his conviction for voyeurism and the imposition of legal financial obligations (LFOs) as part of his sentence. He argues that (1) insufficient evidence supported his conviction, and (2) the trial court failed to comply with the statutory requirements for imposing LFOs because it did not first inquire into his present or future ability to pay. We hold that (1) sufficient evidence supported the voyeurism conviction, and (2) the trial court did not commit clear error in imposing $1,500 in discretionary LFOs. We affirm Vargas's conviction and sentence.

## FACTS

Melissa Geffre was using the women's bathroom at a grocery store when she noticed two shoes in the neighboring stall move toward the partition that separated the stalls. The feet then moved toward the back of the stall, and Geffre heard heavy breathing and a rubbing noise. She looked through a gap between the partition and the wall and saw Vargas watching her from the neighboring stall. She yelled at him, jumped up, and ran out of the stall. Vargas exited the

neighboring stall in a state of partial undress and ran from the bathroom. Geffre pursued Vargas to the grocery store exit then stopped as Vargas fled to a nearby restaurant.

Another customer at the grocery store who witnessed Vargas's flight went into the restaurant to find him. He did not see Vargas but suspected he had locked himself in a stall in the restaurant's bathroom. He notified the police, who eventually were able to coax Vargas out of the stall. Geffre identified Vargas as the man who had been watching her in the grocery store bathroom, and the other customer verified that Vargas was the man he had seen flee into the restaurant. Police then arrested Vargas.

The State charged Vargas with voyeurism.[1] The jury found Vargas guilty. At sentencing, the trial court imposed mandatory LFOs amounting to $800, as well as $1,500 in discretionary LFOs for the cost of Vargas's assigned counsel. Vargas appeals his conviction and his sentence.

## ANALYSIS

Vargas argues that the evidence against him was insufficient and that the sentencing court violated RCW 10.01.160(3) by failing to make an individualized inquiry into his current and future ability to pay before imposing the discretionary LFOs. We reject Vargas's challenges and affirm his conviction and sentence.

---

[1] The State also charged Vargas with second degree malicious mischief, but the trial court dismissed the charge.

I. CONVICTION—SUFFICIENCY OF THE EVIDENCE

Vargas argues that the State failed to offer evidence sufficient to support his conviction for voyeurism. We disagree and hold that sufficient evidence supported his conviction.

The due process guarantee in our state and federal constitutions allow us to uphold a criminal conviction only if the State has proved each element of the charged offense beyond a reasonable doubt. *State v. O'Hara*, 167 Wn.2d 91, 105, 217 P.3d 756 (2009). When a criminal defendant claims that the evidence against him was insufficient to support his conviction, we review whether a rational trier of fact could find the elements of the charged crime beyond a reasonable doubt on the basis of the State's admitted evidence. *State v. Kintz*, 169 Wn.2d 537, 551, 238 P.3d 470 (2010). By challenging the sufficiency of the evidence against him, a defendant admits the truth of the State's evidence and all inferences that may reasonably be drawn therefrom. *Kintz*, 169 Wn.2d at 551. We view the evidence in the light most favorable to the State and draw all inferences in the State's favor. *State v. Rose*, 175 Wn.2d 10, 14, 282 P.3d 1087 (2012). We also defer to the jury's credibility determinations and resolution of conflicting testimony. *State v. McCreven*, 170 Wn. App. 444, 477, 284 P.3d 793 (2012), *review denied*, 176 Wn.2d 1015 (2013).

The crime of voyeurism consists of (1) intentionally and knowingly, (2) viewing another person or that person's intimate areas for more than a brief period of time, (3) for purposes of sexual gratification, (4) without that person's knowledge and consent, and (5) in a place or under circumstances where the person has a reasonable expectation of privacy. RCW 9A.44.115; *State v. Fleming*, 137 Wn. App. 645, 647, 154 P.3d 304 (2007).

Vargas argues that the evidence before the jury was insufficient to support a finding that he had viewed Geffre for more than a brief period of time. Although RCW 9A.44.115, the statute

3

criminalizing voyeurism, does not specify how long such a viewing must be, a jury may find the viewing to be more than brief if the victim testifies that they discovered the defendant's gaze, yelled at the defendant, then fled before the defendant stopped looking at them. *See Fleming*, 137 Wn. App. at 648.

In *Fleming*, Division One of our court affirmed a voyeurism conviction where the evidence showed that the victim discovered the defendant peering over a bathroom stall at her and she yelled at him to stop. *Id.* at 647. The defendant in that case stuck his tongue out in response, after which the victim fled the stall and ran out of the bathroom while the defendant remained watching from over the stall. *Id.* at 647. Vargas attempts to distinguish his conduct from that of the defendant in *Fleming*. We are not persuaded.

In her testimony, Geffre described a scenario similar to that in *Fleming*. She said she saw shoes in the neighboring stall move toward the partition between the stalls, feet move toward the back of the stall and a shadow at the back of the stall, and she heard a heavy breathing and rubbing sound. Upon looking closer, she saw Vargas peering at her through the crack between the stalls, yelled at him, then left the stall in a hurry. Once she exited the stall, Vargas left the neighboring stall and ran from the bathroom. This testimony, and all reasonable inferences from the testimony, was sufficient for the jury to find that Vargas had watched Geffre in the stall for more than a brief period of time and supports a finding that Vargas had engaged in voyeurism rather than casual or cursory viewing.

Vargas argues that his testimony showed he took a cursory glance into the next stall to determine whether he was in the women's or men's bathroom, and that Geffre just happened to look at him at that moment. Clearly, the jury made a credibility determination between Vargas's

testimony and Geffre's testimony. We will not disturb the jury's credibility determination. *McCreven*, 170 Wn. App. at 477. We hold that sufficient evidence supported the voyeurism conviction.

## II. SENTENCE—INQUIRY INTO ABILITY TO PAY LFOS

Vargas argues that the trial court erred by imposing discretionary LFOs against him without first inquiring into his present or future ability to pay. We disagree.

At sentencing, the trial court imposed $800 in mandatory LFOs and $1,500 in discretionary LFOs for the cost of Vargas's assigned counsel. Vargas objected at sentencing to the amount imposed by the sentencing court, but not its validity; he now challenges its validity for the first time on appeal.[2]

In general, we may refuse to review any issue not raised below; "[a] defendant who makes no objection to the imposition of discretionary LFOs at sentencing is not automatically entitled to review," and an "'appellate court may refuse to review any claim of error which was not raised in the trial court.'" *State v. Blazina*, 182 Wn.2d 827, 832, 344 P.3d 680 (2015) (quoting RAP 2.5(a)). But RAP 2.5(a) grants us discretion to review issues raised for the first time on appeal and thus we may consider unpreserved challenges to findings on a defendant's ability to pay discretionary LFOs; we exercise it here. *Blazina*, 182 Wn.2d at 833; RAP 2.5(a).

For mandatory LFOs, "the legislature has divested courts of the discretion to consider a defendant's ability to pay when imposing these obligations. For victim restitution, victim

---

[2] Vargas objected to the sentencing court's imposition of the $1,500 LFO for the costs of his assigned counsel. But he objected on grounds that the amount was inappropriate under the circumstances. He did not raise any issues of statutory law or argue that the sentencing court should inquire into his ability to pay.

assessments, DNA fees, and criminal filing fees, the legislature has directed expressly that a defendant's ability to pay should not be taken into account." *State v. Lundy*, 176 Wn. App. 96, 102, 308 P.3d 755 (2013).

But as to the $1,500 discretionary LFO, RCW 10.01.160(3) provides that a sentencing court "shall not order a defendant to pay costs unless the defendant is or will be able to pay them. In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose."

In *Blazina*, the court held that this language obligates sentencing courts to inquire into a criminal defendant's financial circumstances and ability to pay before imposing discretionary LFOs as sentencing conditions. *Blazina*, 182 Wn.2d at 837. Moreover, a cursory inquiry is insufficient:

> [T]he court must do more than sign a judgment and sentence with boilerplate language stating that it engaged in the required inquiry. The record must reflect that the trial court made an individualized inquiry into the defendant's current and future ability to pay. Within this inquiry, the court must also consider important factors . . . such as incarceration and a defendant's other debts, including restitution, when determining a defendant's ability to pay.

*Id.* at 838.

We review a sentencing court's imposition of discretionary LFOs under a clearly erroneous standard. *State v. Bertrand*, 165 Wn. App. 393, 404, 267 P.3d 511 (2011); *State v. Baldwin*, 63 Wn. App. 303, 312, 818 P.2d 1116, 837 P.2d 646 (1991). A sentencing court's decision is clearly erroneous and must be reversed when review of all the evidence leaves the reviewing court with the "'definite and firm conviction that a mistake has been committed.'" *Lundy*, 176 Wn. App.

at 105 (quoting *Schryvers v. Coulee Cmty. Hosp.*, 138 Wn. App. 648, 654, 158 P.3d 113 (2007)). "The inquiry is whether the court's determination [that the defendant is or will be able to pay the LFOs] is supported by the record." *Baldwin*, 63 Wn. App. at 312 n.27. Although *Baldwin* does not require formal findings of fact about a defendant's current or future ability to pay LFOs, the record must be sufficient for us to review whether the trial court made an individualized review as required by *Blazina*, 182 Wn.2d at 838.

The State argues that "[t]he Pre-Sentence Investigation (PSI) established an adequate factual basis of defendant's future ability to pay." Br. of Resp't at 16; *see also* Supplemental Clerk's Papers (Suppl. CP) at 89. "'[W]hen the presentence report establishes a factual basis for the defendant's future ability to pay and the defendant does not object, the requirement of inquiry into the ability to pay is satisfied.'" *Lundy*, 176 Wn. App. at 106 (quoting *Baldwin*, 63 Wn. App. at 311); *see State v. Bergen*, 186 Wn. App. 21, 30, 344 P.3d 1251 (2015) (holding that the State has a low evidentiary burden for establishing a defendant's present or likely future ability to pay).

Here, the judge received and reviewed the PSI before the sentencing hearing. The PSI included one section discussing Vargas' education and employment history and another section discussing his financial resources. The PSI established that Vargas was not working at the time of his arrest because he recently left a previous job to begin a new job. The PSI also showed that he was able to hold jobs, including construction and landscaping jobs, and was physically able to work. Although he had no property, he had three bank accounts with undisclosed balances.

Accordingly, the record shows that the PSI provided the judge with a sufficient factual basis to conduct an individualized inquiry into Vargas's present or future ability to pay. And Vargas did not object to the validity of the discretionary LFO at the sentencing hearing. We hold

No. 45568-4-II

that the sentencing court made an individualized inquiry into Vargas's present or future ability to pay and the court did not commit clear error in imposing $1,500 in discretionary LFOs as part of Vargas's sentence. We affirm Vargas's conviction and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

BJORGEN, A.C.J.

LEE, J.