IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 35013-4-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| KEVIN JOHN MCMAINS, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Kevin McMains challenges his conviction for child molestation

and the imposition of a clerk's filing fee as a financial obligation. We affirm both.

FACTS

This factual statement comes from trial evidence. The McMains family, including

son Kevin, and the Roe family, including daughter Julie, were long time neighbors and

friends. Julie Roe described her relationship with the McMains children as that of

siblings. Julie considered Kevin McMains a brother and often hugged him. Julie Roe is

a pseudonym.

On Thanksgiving night, November 26, 2015, Julie Roe, Kevin McMains, and

Harold Driver, also a pseudonym, played video games in the Roe living room. Julie was

twelve years old at the time, while McMains was twenty-three years old. McMains and

Julie fell asleep on the couch together while touching or cuddling, which the two

described as a normal occurrence. Julie claims that, while she pretended to sleep,

McMains put his hands under her bra and touched either one or both of her breasts.

McMains asserts nothing happened beyond cuddling.

The next night, Friday, November 27, Julie Roe invited Kevin McMains to her

home and the two played video games again with Harold Driver. McMains and Julie

again fell asleep together on the couch. Julie testified that McMains touched her breasts

again so she moved into a fetal position and McMains left the home.

During trial, Julie Roe also declared that Kevin McMains did not touch any other

part of her body on November 27. Nevertheless, in a previous interview, Julie had

commented that McMains inserted his middle finger into her vagina and left his digit in

her vagina for two to three hours. A transcript of the interview did not refresh Julie's

recollection, during the trial, of the supposed digital penetration. When initially asked by

the prosecution several times if anything else happened that night, Julie repeatedly stated

no. Julie Roe then changed her story after speaking with the prosecutor during a recess

and testified that she remembered Kevin McMains inserting fingers into her vagina.

During trial, Kevin McMains testified that nothing happened on November 26 and

27 beyond cuddling, which was not out of the ordinary. Following these two days,

McMains continued coming to Julie Roe's house with the same frequency. McMains

stated nothing led him to believe anything had changed in regard to his relationship with

Julie.

Kevin McMains and Julie Roe both testified that Julie's family engages in frequent physical contact and that family members hug, touch, and fall asleep on each other's laps.

PROCEDURE

The State of Washington charged Kevin McMains with one count of rape of a child in the second degree for the alleged digital penetration of Julie Roe's vagina and one count of child molestation in the second degree for the breast touching. During trial, defense counsel asked an investigating law enforcement officer and Kevin McMains whether McMains voluntarily spoke to officers and voluntarily provided a deoxyribonucleic acid (DNA) sample. Both answered that McMains voluntarily agreed to speak with police and voluntarily provided the sample.

In closing argument, the State's counsel commented:

> There's no doubt that the defendant voluntarily talked with Detective Jones. He didn't have to. He didn't have to do anything. But he did go and talk to Detective Jones. And that the defendant voluntarily gave a DNA sample. The defendant could have refused that DNA sample. But the State wants to suggest to you that what kind of message would that have sent if the defendant refused a DNA sample? Would that have set off a very large alarm bell in Detective Jones' mind?

Report of Proceedings at 608-09. Defense counsel objected to the prosecution's remarks and asserted that the State argued an impermissible inference. The trial court overruled the objection.

3

The jury acquitted Kevin McMains of rape of a child in the second degree but convicted him of child molestation in the second degree. The trial court imposed a low-end standard range sentence of fifteen months' confinement and thirty-six months' community custody. The trial court imposed only mandatory legal financial obligations, including a $200 clerk's filing fee, without any objection from McMains.

LAW AND ANALYSIS

Prosecutorial Misconduct

On appeal, Kevin McMains contends the prosecution engaged in misconduct when telling the jury, in closing statement, that McMains cooperated with law enforcement because a lack of cooperation would create suspicion.

In alleging prosecutorial misconduct, Kevin McMains has the burden of showing the prosecutor's conduct was both improper and prejudicial in context of the entire trial. *State v. Walker*, 182 Wn.2d 463, 477, 341 P.3d 976 (2015). Calling attention to a defendant's exercise of his or her constitutional rights suggests an unfavorable inference that violates due process. *State v. Fricks*, 91 Wn.2d 391, 395, 588 P.2d 1328 (1979). Otherwise improper remarks do not provide grounds for reversal when invited, provoked, or occasioned by defense counsel and when the comments reply to defense counsel's statements, unless the remarks go beyond a pertinent reply or so prejudice the defendant that an instruction would not cure them. *State v. La Porte*, 58 Wn.2d 816, 822, 365 P.2d 24 (1961). Prejudice can be shown only if defendant shows a substantial likelihood that

the instances of misconduct affected the jury's verdict. *State v. Pirtle*, 127 Wn.2d 628, 672, 904 P.2d 245 (1995).

In this appeal, the prosecutor's statement does not require reversal because the statement germanely replied to testimony responding to defense counsel's questioning. Counsel asked both a police officer and Kevin McMains about McMains' voluntary decision to speak with police and provide a DNA sample. The implication from that line of questioning suggested that McMains' cooperation spoke to his innocence. Only after this implication arose did the prosecution render the challenged comment.

The State may not imply guilt by reason of an accused exercising his constitutional rights. Nevertheless, Kevin McMains cites no case law prohibiting the prosecution from arguing an accused cooperated with law enforcement in order to avoid suspicion. Even if improper, the prosecution uttered the comments in response to Kevin McMains' presenting testimony touting his cooperation with officers.

The jury ultimately acquitted Kevin McMains of the child rape charge to which the DNA sample related. Therefore, the jury found the prosecution's argument unpersuasive and no prejudice resulted.

### Criminal Filing Fee

The trial court, as part of sentencing, imposed a $200 filing fee on Kevin McMains. On appeal, McMains contends the fee violates his equal protection rights.

5

No. 35013-4-III
*State v. McMains*

The current version of the statute, RCW 36.18.020(2)(h), that imposes a clerk's

filing fee on a convicted accused declares:

> Upon conviction or plea of guilty, upon failure to prosecute an appeal from a court of limited jurisdiction as provided by law, or upon affirmance of a conviction by a court of limited jurisdiction, an adult defendant in a criminal case *shall be liable* for a fee of two hundred dollars.

(Emphasis added.) "Shall" imposes a mandatory requirement unless a contrary

legislative intent is apparent, whereas the term "may" is permissive. *State v. Martin*, 137

Wn.2d 149, 154, 969 P.2d 450 (1999).

This court has previously refused to consider or has rejected challenges to

mandatory legal financial obligations, such as the case filing fee, made by Kevin

McMains. *State v. Lundy*, 176 Wn. App. 96, 102, 308 P.3d 755 (2013); *State v.

Stoddard*, 192 Wn. App. 222, 224, 228-29, 366 P.3d 474 (2016); *State v. Mathers*, 193

Wn. App. 913, 918-19, 376 P.3d 1163, *review denied*, 186 Wn.2d 1015, 380 P.3d 482

(2016); *State v. Johnson*, 194 Wn. App. 304, 308-09, 374 P.3d 1206 (2016); *State v.

Tyler*, 195 Wn. App. 385, 404 n.11, 382 P.3d 699 (2016); and *State v. Seward*, 196 Wn.

App. 579, 586-87, 384 P.3d 620 (2016), *review denied*, 188 Wn.2d 1015, 396 P.3d 349

(2017).

In *State v. Johnson*, this court held that the imposition of the DNA fee as a

mandatory financial obligation did not violate equal protection. We held that the

defendant, in raising the equal protection argument, failed to demonstrate that the

6

legislature had a discriminatory intent in enacting the DNA collection fee, and thus, the court need not engage in a rational basis review of the statute.

Kevin McMains did not object to the imposition of the criminal filing fee at sentencing. Although McMains challenges the criminal filing fee instead of the DNA fee challenged in *State v. Johnson*, McMains also fails to demonstrate discriminatory intent by the legislature in enacting RCW 36.18.020(2)(h). Thus, this court need not engage in a rational basis review of this neutral statute. The fee does not violate constitutional guarantees of equal protection.

Kevin McMains also contends that RCW 36.18.020(2)(h) does not mandate that the trial court impose the $200 filing fee. Nevertheless, Washington courts have consistently upheld the imposition of the criminal filing fee as mandatory. *State v. Lundy*, 176 Wn. App. at 102-03; *State v. Stoddard*, 192 Wn. App. at 225; *State v. Gonzales*, 198 Wn. App. 151, 155 & n.4, 392 P.3d 1158, *review denied*, 188 Wn.2d 1022, 398 P.3d 1140 (2017); *State v. Seward*, 196 Wn. App. at 587; *State v. Malone*, 193 Wn. App. 762, 764, 376 P.3d 443 (2016); *In re Personal Restraint of Dove*, 196 Wn. App. 148, 152, 381 P.3d 1280 (2016), *review denied*, 188 Wn.2d 1008, 398 P.3d 1070 (2017); *State v. Bergen*, 186 Wn. App. 21, 30, 344 P.3d 1251 (2015); *State v. Munoz-Rivera*, 190 Wn. App. 870, 894, 361 P.3d 182 (2015).

In *State v. Gonzalez*, this court addressed the same argument raised by Kevin McMains. Manuel Gonzalez argued *Lundy* did not base its holding, that the filing fee is

mandatory, on any reasoned analysis and that the filing fee is not mandatory because the language of RCW 36.18.020(2)(h) differs from that of other mandatory legal financial obligation statutes.  Gonzalez also contended that the word "liable" is ambiguous because the term could mean a situation from which legal liability might arise.

In rejecting these arguments, the *Gonzalez* court noted Manuel Gonzalez's arguments required the court to focus on the word "liable" and ignore the language immediately preceding the term.  The court refused to sever the word "liable" from the phrase "shall be liable" and reaffirmed that the legislature intended to mandate imposition of the filing fee.  *State v. Gonzales*, 198 Wn. App. at 154-55.  We consider the reasoning of *Gonzales* sound and uphold the decision.

Appellate Costs

Kevin McMains also filed a motion to deny appellate costs being imposed against him.  In the motion, McMains reiterates the same arguments recently rejected by this court in an unpublished case.  *State v. Lopez*, No. 34656-1-III (Wash. Ct. App. Mar. 22, 2018) (unpublished), https://www.courts.wa.gov/opinions/pdf/346561_ord.pdf

Kevin McMains contends our June 10, 2016 general order conflicts with RAP 14.2 and RAP 15.2.  Rule 14.2 previously read, "A commissioner or clerk of the appellate court will award costs to the party that substantially prevails on review, unless the appellate court directs otherwise in its decision terminating review."  Former RAP 14.2

(1998). Our Supreme Court amended the rule effective January 31, 2017. Instead of

ending the sentence at the word "review," the court added:

> [O]r unless the commissioner or clerk determines an adult offender does not have the current or likely future ability to pay such costs. When the appellate court has entered an order that an offender is indigent for purposes of appeal, that finding of indigency remains in effect, pursuant to RAP 15.2(f), unless the commissioner or clerk determines by a preponderance of the evidence that the offender's financial circumstances have significantly improved since the last determination of indigency. The commissioner or clerk may consider any evidence offered to determine the individual's current or future ability to pay.

RAP 14.2. Additionally, RAP 15.2(f) reads:

> A party and counsel for the party who has been granted an order of indigency must bring to the attention of the appellate court any significant improvement during review in the financial condition of the party. The trial court will give a party the benefits of an order of indigency throughout the review unless the appellate court finds the party's financial condition has improved to the extent that the party is no longer indigent.

Kevin McMains argues this court's general order dated June 10, 2016, conflicts

with the presumption of continued indigency that RAP 14.2 and RAP 15.2(f) embrace.

McMains further argues the general order places the burden of proof and production on

McMains to demonstrate continued indigency that McMains contends contradicts the

standards of RAP 14.2 and RAP 15.2. We disagree. Our general order effectuates the

rule on appeal, rather than conflicts with the rules.

RAP 15.2(f) states, an "appellate court will give a party the benefits of an order of

indigency throughout the review unless the appellate court finds the party's financial

condition has improved." The offender's filing a report as to continued indigency assists the appellate court in gaining information needed to determine improvement of the offender's financial circumstances. An appellate court cannot know whether the financial condition has improved if it lacks data of the offender's current condition.

Under both RAP 14.2 and RAP 15.2(f), the burden of proof lies with the offender. RAP 15.2(f) provides, "A party . . . must bring to the attention of the appellate court any significant improvement during review in the financial condition of the party." The amendment to RAP 14.2 states "[t]he commissioner or clerk may consider *any evidence offered* to determine the individual's current or future ability to pay." (Emphasis added.) Thus, the language in the rules anticipates a defendant offering proof of financial conditions to the court or the clerk.

Kevin McMains also argues that the appellate cost system undermines the attorney-client relationship and creates a conflict of interest because the Office of Public Defense only gets paid when its client loses. We note the remote possibility of such a conflict, but McMains provides no legal authority, cites no empirical research, and presents no concrete examples of the attorney-client relationship being undermined or a conflict of interest actually occurring in an appeal. This court does not consider bald assertions lacking cited factual and legal support. RAP 10.3(a)(6); *West v. Thurston County*, 168 Wn. App. 162, 187, 275 P.3d 1200 (2012).

The trial court found Kevin McMains indigent for purposes of appeal. RAP 15.2(f) dictates that the finding remain in effect throughout the review. McMains also filed a report as to continued indigency. McMains will soon be twenty-six years old, holds a high school diploma, and received a short sentence. The nature of his conviction, however, will limit his employment opportunities in the future. McMains has minimal outstanding debt but owes support for one child and receives food stamp benefits. These facts show no improvement in McMains' status as indigent. We hold that McMains' status of indigency continues and award the State no costs on review.

CONCLUSION

We affirm Kevin McMains' conviction for child molestation. We also affirm the trial court's imposition of legal financial obligations. We deny the State costs on appeal.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Fearing, J.

WE CONCUR:

Lawrence-Berrey, C.J.

Pennell, J.

11