# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 51540-7-II |
| Respondent, | |
| v. | |
| CHELSEA KIRSTEN HAYES, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Chelsea K. Hayes appeals her convictions and sentence for conspiracy to deliver a controlled substance (methamphetamine) within 1,000 feet of a school bus route stop, possession of a controlled substance (methamphetamine) with intent to deliver within 1,000 feet of a school bus route stop, and possession of a controlled substance (oxycodone). Hayes contends that she received ineffective assistance of counsel and that there is insufficient evidence to support her convictions. Hayes further alleges the sentencing court erred by imposing a school bus route stop sentence enhancement and by imposing certain legal financial obligations (LFOs).

We affirm Hayes's convictions, but we reverse the school bus route stop sentence enhancement on the conspiracy to deliver a controlled substance conviction and the imposition of the challenged LFOs. Accordingly, we remand to the sentencing court to strike the school bus route stop sentence enhancement on the conspiracy to deliver conviction, and strike the criminal filing fee and deoxyribonucleic acid (DNA) collection fee.

FACTS

A.    ATTEMPTED CONTROLLED BUY

Thurston County Narcotics Task Force suspected Hayes of being involved in illegal narcotics activity and arranged for a confidential informant (CI) to purchase narcotics from her. In May 2016, the task force gave the CI $1,000 in prerecorded buy money to purchase approximately two ounces of methamphetamine from Hayes. The CI contacted Hayes by text to arrange to meet her while wearing a police body wire. The CI set up the buy to occur at a house located at 7250 14th Avenue Southeast in Lacey, Washington.

After the CI arrived at the house, Hayes told the CI they had to wait for someone to bring the methamphetamine.  A silver BMW pulled into the driveway, and Hayes told the CI that "her guy was here."  2 Verbatim Report of Proceedings (VRP) (Feb. 14, 2018) at 348.  The CI gave Hayes the money, and Hayes then left the house and was gone for 10 to 15 minutes.  An officer watching the home observed Hayes exit the home and get into the vehicle.

Hayes then returned to the house.  When she walked in, the CI observed Hayes holding a plastic bag with what the CI believed to be methamphetamine inside.  They then went into what the CI called "her" bedroom, referring to Hayes, because the bedroom had Hayes's "stuff in there." 2 VRP (Feb. 14, 2018) at 349.

Hayes was having trouble with her scale and could not get it to weigh correctly.  She was frustrated because she had lost an ounce of methamphetamine in the past and her supplier "want[ed] his money."  2 VRP (Feb. 14, 2018) at 354.  Hayes worked on the scale for 20 to 30 minutes and eventually sent the CI to her car to retrieve another scale.  During this time, Hayes

told the CI that she needed to leave to take her son to basketball practice. Eventually, Hayes asked the CI to get something from the pantry to calibrate her scale and when the CI returned to the bedroom Hayes was gone.

The CI waited for Hayes at the house with the other occupants. Eventually, the CI texted one of the task force members, Officer Napoleon Parker that the CI was being pressed to leave the house by two other adults in the home, and the CI was beginning to feel nervous because of the length of time the controlled buy was taking. Officer Parker first instructed the CI to remain inside the residence, but then told the CI to leave for safety concerns.

B.     SEARCHES AND CHARGES

Officers obtained a search warrant for the 14th Avenue home. In one of the bedrooms, officers found a small plastic bag containing methamphetamine, a digital scale, and three and a half grams of methamphetamine in the top drawer of a dresser. On the top of the dresser, officers found an oxycodone pill. The bedroom contained woman's clothing, family photos, mail addressed to Hayes, and a player's casino card with Hayes's name on it. The name "Chelsea" was written on the dresser top. 3 VRP (Feb. 15, 2018) at 425. Officers found in another bedroom a black box, containing packaging materials, pay/owe sheets, and digital scales.

Law enforcement also obtained a search warrant for the silver BMW. In the vehicle, police found a cellphone, a loaded .45 caliber handgun, and "a large quantity of methamphetamine" that weighed 259 grams. 3 VRP (Feb. 15, 2018) at 458. Police also found Hayes's name and number entered in the cell phone found in the vehicle.

Law enforcement obtained another search warrant for the home of the BMW's owner. Inside the home, police found a large amount of cash and cell phones.

The State charged Hayes with conspiracy to deliver a controlled substance (methamphetamine), possession of a controlled substance (methamphetamine) with intent to deliver, and possession of a controlled substance (oxycodone). The State also alleged that acts leading to the conspiracy to deliver a controlled substance (methamphetamine) and possession of a controlled substance (methamphetamine) with intent to deliver charges occurred within 1,000 feet of a school bus route stop.

C.      TRIAL AND VERDICT

On the morning of trial, Hayes requested appointment of new counsel. She informed the trial court that her attorney did not go over discovery with her and that her attorney was not returning her calls. Defense counsel responded that he had diligently worked the case and that he had met with Hayes at his office, exchanged emails, and returned phone calls but was unable to leave messages because Hayes's voicemail was full. Defense counsel also stated that he had discussed motions to suppress, search warrants, and other confidential matters with Hayes. The trial court denied Hayes's request for the appointment of new counsel, finding that defense counsel "has explored not only trial issues but pretrial issues" and that he has been working on the case. 1 VRP (Feb. 13, 2018) at 24.

At trial, Officer Parker testified that North Thurston Public Schools notified him that a school bus stop was in front of the 14th Avenue house. He further testified that "[d]uring the execution of the warrant . . . while we were standing in the driveway a school bus pulled up to the

driveway of the residence and dropped off [Hayes's] son for—after school there in the driveway." 2 VRP (Feb. 13, 2018) at 219.

Lisa Niendorf, dispatcher from North Thurston Public Schools, testified that in May 2016 a school bus stop was located at 7250 14th Avenue Southeast. Niendorf also testified that the school bus stop was "actually at that address" because Hayes's son needed special assistance. 2 VRP (Feb. 14, 2018) at 243. Additionally, Elizabeth Donovan, a Thurston County Sheriff's Office crime analyst, testified that she produced a map showing the 14th Avenue home was within 1,000 feet of a school bus route stop.

The defense rested its case without calling witnesses. No limiting instruction was provided regarding the admission at trial of the evidence located inside the BMW and inside the BMW's owner's home.

The jury found Hayes guilty of conspiracy to deliver a controlled substance (methamphetamine), possession of a controlled substance (methamphetamine) with intent to deliver, and possession of a controlled substance (oxycodone). The jury also found that acts leading to the conspiracy to deliver a controlled substance and possession of a controlled substance with intent to deliver charges occurred within 1,000 feet of a school bus route stop.

D.    ALLOCUTION AND SENTENCING

During allocution, Hayes told the sentencing court she had a prescription for oxycodone and that she gave a copy of the prescription to defense counsel during trial. Hayes also told the court that she was in possession of documents which demonstrated that there was no school bus

stop in effect at her house at the time of the crimes and that the documents "came from the prosecutor, my attorney." 3 VRP (March 7, 2018) at 559.

The sentencing court sentenced Hayes to 12 months on the conspiracy to deliver a controlled substance (methamphetamine) conviction plus 24 months for the school bus route stop sentence enhancement, 36 months on the possession of a controlled substance (methamphetamine) with intent to deliver conviction plus 24 months for the school bus route stop sentence enhancement, and 12 months on the possession of a controlled substance (oxycodone) conviction. The sentencing court ran the conviction sentences concurrently, and the sentence enhancements consecutively to each other and to the conviction sentence for a total sentence of 84 months. The sentencing court also imposed LFOs including a $200 criminal filing fee and a $100 DNA collection fee. In addition, the court entered an order of indigency.

Hayes appeals.

ANALYSIS

A.      SUFFICIENCY OF THE EVIDENCE

Hayes first argues that sufficient evidence does not support each of her three convictions nor does it support her sentence enhancements. We disagree.

We review a challenge to the sufficiency of the evidence de novo. *State v. Berg*, 181 Wn.2d 857, 867, 337 P.3d 310 (2014). A challenge to the sufficiency of the evidence admits the truth of the State's evidence. *Id.* We view all evidence in the light most favorable to the State to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* All reasonable inferences from the evidence must be drawn in favor of the

State and interpreted most strongly against the defendant. *Id.* "Circumstantial evidence and direct evidence carry equal weight when reviewed by an appellate court." *State v. Trey M.*, 186 Wn.2d 884, 905, 383 P.3d 474 (2016), *cert. denied*, 138 S. Ct. 313 (2017). On appeal, we "must defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004). Reviewing courts cannot reweigh evidence on appeal. *State v. Ramos*, 187 Wn.2d 420, 453, 387 P.3d 650, *cert. denied*, 138 S. Ct. 467 (2017).

1.      Conspiracy to Deliver a Controlled Substance

Hayes contends sufficient evidence does not support her conspiracy to deliver a controlled substance conviction because the facts show her intent was to steal money from the CI and not to sell methamphetamine to the CI.

To establish a conspiracy to deliver a controlled substance, the State must show the existence of an agreement to engage in the delivery of a controlled substance and the intent that a controlled substance be delivered. RCW 69.50.407; *State v. Smith*, 65 Wn. App. 468, 471, 828 P.2d 654, *review denied*, 119 Wn.2d 1019 (1992).

Here, the evidence shows the CI set up a controlled drug buy with Hayes at the 14th Avenue house. Once inside the house, Hayes told the CI they had to wait for someone to bring the methamphetamine. A silver BMW pulled into the driveway, and Hayes told the CI that "her guy was here." 2 VRP (Feb. 14, 2018) at 348. After the CI gave Hayes the money, she left the house and was gone for 10 to 15 minutes. An officer watching the house observed Hayes exit the house and get in the vehicle.

Hayes then returned to the house. When she walked in, the CI observed Hayes holding a plastic bag with methamphetamine inside. (2RP 349) The two then went into a room that the CI believed was Hayes's room because Hayes had her "stuff in there." 2 VRP (Feb. 14, 2018) at 349.

Hayes had trouble with her scale and could not get it to weigh correctly. She was frustrated because she had lost an ounce of methamphetamine in the past and her supplier wanted his money. Hayes worked on the scale for 20 to 30 minutes and eventually sent the CI to her car to retrieve another scale. During this time, Hayes told the CI that she needed to leave to take her son to basketball practice. Hayes then asked the CI to get something from the pantry and when the CI returned to the bedroom Hayes was gone. Eventually, the CI was told to leave the house for safety concerns.

Viewing the above evidence and all reasonable inferences therefrom in the light most favorable to the State, a rational fact finder could have found beyond a reasonable doubt that Hayes conspired to delivery methamphetamine to the CI. While Hayes argues the evidence shows more that she intended to steal from the CI rather than deliver methamphetamine to him, we defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *Thomas*, 150 Wn.2d at 874-75. Hayes's sufficiency of the evidence challenge to the conspiracy to deliver a controlled substance conviction fails.

2.       Possession of a Controlled Substance with Intent to Deliver and Possession of a Controlled Substance

Hayes next contends that there is insufficient evidence to support her possession of methamphetamine with intent to deliver and possession of oxycodone convictions because the

State did not prove constructive possession. She argues there was no proof that the 14th Avenue home was her residence or that she had exclusive control over the bedroom where evidence was located.

For possession of a controlled substance with intent to deliver, the State had to prove (1) possession (2) of a controlled substance (3) with the intent to deliver. RCW 69.50.401(1). For possession of a controlled substance, the State had to prove that Hayes (1) possessed (2) a controlled substance. RCW 69.50.4013(1).

A person can have actual possession or constructive possession of an item. *State v. Reichert*, 158 Wn. App. 374, 390, 242 P.3d 44 (2010), *review denied*, 171 Wn.2d 1006 (2011). Actual possession requires physical custody of the item. *Id*. Constructive possession occurs when a person has "dominion and control" over an item. *Id.* A person's dominion and control over a premises "creates a rebuttable presumption that the person has dominion and control over items on the premises." *Id.* Therefore, a jury can infer constructive possession of items on the premises from a person's dominion and control over the premises. *State v. Shumaker*, 142 Wn. App. 330, 334, 174 P.3d 1214 (2007). Moreover, nonexclusive possession of premises combined with knowledge of drug transactions occurring at the premises are sufficient to establish constructive possession. *State v. Gonzales*, 46 Wn. App. 388, 403, 731 P.2d 1101 (1986).

Here, while executing a search warrant, officers searched a bedroom that the CI believed belonged to Hayes because Hayes had her "stuff in there." 2 VRP (Feb. 14, 2018) at 349. In the bedroom, police found a small plastic bag containing methamphetamine, a digital scale, and three and a half grams of methamphetamine in the top drawer of a dresser. On the top of the dresser,

officers found an oxycodone pill. The bedroom contained woman's clothing, family photos, mail addressed to Hayes, and a player's casino card with Hayes's name on it. The name "Chelsea" was written on the dresser top. 3 VRP (Feb. 15, 2018) at 425. Police also found in another bedroom a black box that contained packaging materials, pay/owe sheets, and digital scales. Hayes's children were at the home, and there was a special school bus stop in front of the home for Hayes's son.

Viewing the above evidence and all reasonable inferences therefrom in the light most favorable to the State, a rational fact finder could have found beyond a reasonable doubt that Hayes constructively possessed the methamphetamine and oxycodone. Therefore, Hayes's insufficiency of the evidence challenge to the possession of a controlled substance (methamphetamine) with intent to deliver and possession of a controlled substance (oxycodone) convictions fail.

3.    School Bus Route Stop Sentence Enhancement

Hayes next contends that there is insufficient evidence to support her school bus route stop sentence enhancements. She alleges the State failed to prove that a school bus regularly stopped at the school bus route stop near the 14th Avenue house. For the reasons discussed below, imposing the sentence enhancement on the conspiracy to deliver a controlled substance conviction was error; therefore, we only address this issue as it relates to the sentence enhancement on the possession of a controlled substance with intent to deliver conviction.

Under RCW 69.50.435(1)(c), a defendant convicted of possessing a controlled substance with the intent to deliver within 1,000 feet of a school bus route stop is subject to a sentencing enhancement. There is no additional requirement that the State prove the school bus "regularly"

10

stops at the school bus route stop as suggested by Hayes.  Br. of Appellant at 35 (emphasis omitted).

Here, Officer Parker testified that North Thurston Public Schools notified him that a school bus stop was in front of the 14th Avenue house.  He further testified that, "During the execution of the warrant . . . while we were standing in the driveway a school bus pulled up to the driveway of the residence and dropped off [Hayes's] son for—after school there in the driveway."  2 VRP (Feb. 13, 2018) at 219.  Niendorf testified that in May 2016, a school bus stop was located at 7250 14th Avenue Southeast.  Niendorf also testified that the school bus stop was "actually at that address" because Hayes's son needed special assistance.  2 VRP (Feb. 14, 2018) at 243.  Lastly, Donovan testified that she produced a map showing the 14th Avenue home was within 1,000 feet of a school bus route stop.

Viewing the above evidence and all reasonable inferences therefrom in the light most favorable to the State, a rational fact finder could have found beyond a reasonable doubt that Hayes possessed methamphetamine with intent to deliver within 1,000 feet of a school bus route stop. Therefore, Hayes's insufficiency of the evidence challenge to the school bus route stop sentence enhancement fails.

B.    INEFFECTIVE ASSISTANCE OF COUNSEL

Hayes next argues that she was denied effective assistance of counsel because defense counsel (1) failed to investigate whether Hayes had a valid prescription for oxycodone, (2) failed to investigate whether there was a school bus route stop near the 14th Avenue house in May 2016, (3) failed to research whether sentence enhancements run concurrently or consecutively, (4) failed

to provide a limiting jury instruction regarding evidence found inside the BMW, and (5) cumulative error. We disagree.

We review ineffective assistance of counsel claims de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prevail on an ineffective assistance of counsel claim, the defendant must show both that defense counsel's representation was deficient and the deficient representation prejudiced the defendant. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011), *cert. denied,* 135 S. Ct. 153 (2014).

Counsel's performance is deficient if it falls below an objective standard of reasonableness. *Id.* at 33. We engage in a strong presumption that counsel's performance was reasonable. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). A defendant may overcome this presumption by showing that "'there is no conceivable legitimate tactic explaining counsel's performance.'" *Grier*, 171 Wn.2d at 33 (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)). Our Supreme Court has held that in order to determine whether counsel's performance was a legitimate tactic, the record must be sufficient for this court to determine the reasons for counsel's performance. *State v. Linville*, 191 Wn.2d 513, 525-26, 423 P.3d 842 (2018). If counsel's reasons for the challenged action are outside the record on appeal, the defendant must bring a separate collateral challenge. *Id.* To establish prejudice, the defendant must "prove that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different." *Kyllo*, 166 Wn.2d at 862.

1.      Failure to Investigate Valid Prescription

Hayes contends defense counsel failed to investigate whether she had a valid prescription for oxycodone. She supports her argument with her request for new counsel before trial and her statement during allocution that she had a valid prescription. These statements, however, do not establish that defense counsel failed to investigate whether she had a valid prescription. Moreover, even if defense counsel failed to investigate, Hayes's statement is not enough to show there was an actual prescription to establish prejudice. If Hayes has evidence outside our record, her proper recourse is the filing of a personal restraint petition. *State v. McFarland*, 127 Wn.2d 322, 338 n. 5, 899 P.2d 1251 (1995).

2.      Failure to Investigate School Bus Route Stop

Hayes next contends defense counsel failed to investigate whether there was a valid school bus route stop within 1,000 feet of the 14th Avenue home in May 2016. For the reasons discussed below, the sentence enhancement was wrongly imposed on the conspiracy to deliver a controlled substance conviction; therefore, we only address this issue as it relates to the sentence enhancement on the possession of a controlled substance with intent to deliver conviction.

Hayes relies on her statement during allocution that she had documents showing there was no school bus route stop near the 14th Avenue house in May 2016. This statement, however, does not establish that defense counsel failed to investigate whether there was a school bus stop route near the 14th Avenue home.

Moreover, even if counsel failed to investigate, Hayes's statement is insufficient to show prejudice given the testimony to the contrary. Officer Parker testified that North Thurston Public

Schools notified him that a school bus stop was in front of the 14th Avenue house.  He further testified, "During the execution of the warrant . . . while we were standing in the driveway a school bus pulled up to the driveway of the residence and dropped off [Hayes's] son for—after school there in the driveway."  2 VRP (Feb. 13, 2018) at 219.  Niendorf testified that in May 2016 a school bus stop was located at 7250 14th Avenue Southeast.  Niendorf also testified that the school bus stop was "actually at that address" because Hayes's son needed special assistance.  2 VRP (Feb. 14, 2018) at 243.  Additionally, Donovan testified that she produced a map showing the 14th Avenue home was within 1,000 feet of a school bus route stop.

Thus, even if defense counsel failed to investigate the school bus route stop locations, there was overwhelming evidence that a school bus route stop was in front of the 14th Avenue home.  Because Hayes cannot show prejudice even if there was a failure to investigate, Hayes cannot establish ineffective assistance of counsel on this issue.

3.      Failure to Provide Legal Authority on Sentence Enhancements

Hayes next contends defense counsel failed to provide legal authority that her school bus route stop sentence enhancements should run concurrently instead of consecutively.  For the reasons discussed below, the sentence enhancement on the conspiracy to deliver a controlled substance conviction was wrongly imposed.  This leaves only one sentence enhancement.  Therefore, the issue of whether defense counsel should have provided legal authority supporting concurrent enhancements is moot.  *See State v. Bergen*, 186 Wn. App. 21, 26, 344 P.3d 1251 (2015) (a case is moot when a court can no longer provide effective relief).  Accordingly, we need not further address this issue.

4. Failure to Offer Limiting Instruction

Hayes next contends defense counsel failed to offer a limiting instruction regarding the evidence found inside the BMW and the BMW's owner's home. A limiting instruction restricts the purposes and scope for which a jury considers evidence. ER 105. ER 105 requires "[w]hen evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly." It is well established that the failure to request a limiting instruction may be a legitimate tactical decision designed to avoid reemphasizing damaging evidence. *State v. Yarbrough*, 151 Wn. App. 66, 90-91, 210 P.3d 1029 (2009).

Here, the State charged Hayes with conspiracy to deliver methamphetamine, possession of methamphetamine with intent to deliver, and possession of oxycodone. Officers obtained a search warrant for the silver BMW that Hayes got into on the day of the controlled buy. Police found in the search of the BMW a cellphone, a loaded .45 caliber handgun, and "a large quantity of methamphetamine" that weighed 259 grams. 3 VRP (Feb. 15, 2018) at 458. Police also found Hayes's name and number entered in the cell phone found in the vehicle.

Police also obtained a search warrant for the home of the BMW's owner. Inside the home, police found a large amount of cash and cell phones. While this evidence primarily goes towards the conspiracy to deliver methamphetamine and possession of methamphetamine with intent to deliver charges, defense counsel's decision to not request a limiting instruction is presumed to be a reasonable trial tactic to avoid reemphasizing this evidence. *See State v. Humphries*, 181 Wn.2d 708, 720, 336 P.3d 1121 (2014) (courts have "applied a presumption" that the failure to request a

limiting instruction is a "tactical decision to avoid reemphasizing prejudicial information.") If Hayes has additional evidence showing the decision was not tactical, her proper recourse is to bring a separate collateral challenge. *Linville*, 191 Wn.2d at 525-26.

Thus, because Hayes does not show that defense counsel's decision to not request a limiting instruction was not a reasonable tactical decision, her ineffective assistance of counsel claim fails.

5.      Cumulative Error

Hayes contends that cumulative instances of ineffective assistance of counsel deprived her of a fair trial. The cumulative error doctrine applies when several errors occurred at the trial level, none of which alone warrants reversal, but the combined errors effectively denied the defendant a fair trial. *State v. Emery*, 174 Wn.2d 741, 766, 278 P.3d 653 (2012). The doctrine does not apply where the errors are few and have little to no effect on the outcome of the trial. *State v. Greiff*, 141 Wn.2d 910, 929, 10 P.3d 390 (2000).

Hayes has not demonstrated that she received ineffective assistance of counsel. Accordingly, the cumulative error doctrine does not apply.

C.      SENTENCE ENHANCEMENT CONCESSION

Hayes filed a supplemental brief arguing that the sentencing court erred in imposing a school bus stop route sentence enhancement on her conspiracy to deliver a controlled substance conviction because the conviction is an unranked offense. The State concedes this issue, and we accept the State's concession.

Under RCW 9.94A.533(6) and *State v. Soto*, 177 Wn. App. 706, 716, 309 P.3d 596 (2013), a school bus route stop sentence enhancement cannot apply to an unranked offense. Conspiracy

16

to deliver a controlled substance is an unranked offense. *State v. Hebert*, 67 Wn. App. 836, 837, 841 P.2d 54 (1992). Accordingly, the sentencing court erred by imposing the 24-month school bus route stop enhancement on the conspiracy to deliver a controlled substance conviction.

D.      CRIMINAL FILING FEE AND DNA COLLECTION FEE

Hayes filed a supplemental brief arguing that the imposed criminal filing fee and DNA collection fee are no longer authorized following the enactment of legislative amendments in 2018 to statutes relating to LFOs.[1] The State appears to agree that the imposed fees should be stricken.[2] We accept the State's concession.

Recent legislation prohibits the sentencing court from imposing discretionary LFOs, including criminal filing fees on indigent defendants. RCW 36.18.020(h); *State v. Ramirez*, 191 Wn.2d 732, 746, 426 P.3d 714 (2018). A DNA collection fee is mandatory "unless the state has previously collected the offender's DNA as a result of a prior conviction." RCW 43.43.7541.

Here, the sentencing court found Hayes to be indigent. The imposition of a criminal filing fee on indigent defendants is prohibited. And, although the record is silent as to whether Hayes's DNA has previously been collected, the State appears to concede that Hayes's DNA has previously been collected and agrees that in the interest of justice, the DNA collection fee should be stricken.

---

[1] Codified on June 7, 2018, ESHB 1783 amends certain RCWS related to LFOs. LAWS OF 2018, ch. 269, § 17. ESHB 1783 prohibits imposing of a criminal filing fee on indigent defendants, and provides that DNA collection is no longer mandatory if the defendant's DNA has previously been collected as the result of a prior conviction. RCW 10.01.160(3); RCW 43.43.7541; *State v. Ramirez*, 191 Wn.2d 732, 746-47, 426 P.3d 714 (2018).

[2] We note that the State's concession refers to a "Barnard," not Hayes; however, we take the State's concession at face value. Br. of Respondent at 32-33.

Therefore, we remand to the sentencing court to strike the criminal filing fee and DNA collection fee.

CONCLUSION

Because sufficient evidence supports all three of Hayes's convictions and Hayes has not demonstrated ineffective assistance of counsel, we affirm Hayes's convictions. Also, we accept the State's concession, reverse the school bus route stop enhancement on the conspiracy to deliver a controlled substance conviction and challenged LFOs, and remand to the sentencing court to strike that enhancement, the criminal filing fee, and the DNA collection fee from Hayes's judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Maxa, C.J.

Cruser, J.